# Wheeling.

DEVENDORF *v.* WEST VIRGINIA OIL AND OIL LAND COMPANY.

Decided November 20, 1880.

(\*Absent, JOHNSON, JUDGE )

1. While the courts should generally refuse to allow a recovery against one person on a negotiable instrument made by another, on proof that the latter was acting as his agent, yet a person may make the signature of another his own by using, or allowing it to be used as such in the course of his business, and that he will and should, under such circumstances when clearly proved, be as much bound as if his own name was affixed to the bill or other negotiable instrument in question. *Lucius* v. *Bradwell,* 5 C. B. 58; *Fuller* v. *Hooper,* 3 Gray 334; Seventh Am. Ed. of Smith's Leading Cases, 379 and cases there cited; *Brown* v. *The Butchers' and Drovers' Bank,* 6 Hill 443; *Rogers* v. *Coit et al., Id.* 322; and see opinion of this court.

2. But the court in applying this principle should be careful to limit its application to the class of cases to which it properly belongs, and not so apply it as to ignore other well established principles applicable to negotiable instruments.

Appeal from and *supersedeas* to a judgment of the circuit court of the county of Wood, rendered on the 2d day of October, 1877, in a cause in said court then pending, wherein D. B. Devendorf was plaintiff, and The West Virginia Oil and Oil Land Company and others were defendants, allowed upon the petition of said company.

\*Counsel in the court below.

1880
Special Term.

Devendorf
*v.*
West Virginia
Oil & Oil Land
Co.

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the judgment appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case :

In September, 1875, D. B. Devendorf, plaintiff, filed his bill against M. V. Bentley, The West Virginia Oil and Oil Land Company, a corporation created and existing by virtue of the laws of Michigan, and G. F. H. Betts in the clerk's office of the circuit court of the county of Ritchie, in which bill the plaintiff alleges, that said West Virginia Oil and Oil Land Company is a foreign corporation and a non-resident of the State of West Virginia ; that the said Oil and Oil Land Company and the said G. F. H. Betts have estate and effects belonging to them in the said county of Ritchie in this State ; that said defendants are indebted to the plaintiff in the sum of $301.78 with interest thereon from the 17th day of September, 1874 ; that said indebtedness accrued in the following manner, viz : On the 1st day of July, 1874, the said company drew its certain draft or bill of exchange upon the said M. V. Bentley for the sum of $300.00, payable seventy-five days after the date thereof to the said G. F. H. Betts, value received, and to be charged to the account of the said company ; the said draft was drawn by the said company by one B. S. Compton, the president of said company, who signed said draft with his own name as president of said company, intending thereby to make the said draft the draft of said company, and to bind it thereby.

The plaintiff alleges, that the said Compton had been previously authorized by the said company by its proper officers to draw and execute drafts, checks and other commercial paper in that form and bind the company and its funds thereby ; and it was at that time, had been long previous thereto, and has been since the constant and usual custom of the said Compton to draw very many of the drafts, checks and other commercial paper of the

said company in that form, simply signing them " B. S. 1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.
Compton, president;" and it has long been, and was at
the time of the drawing of said draft, the constant and
usual custom of said company to recognize and honor the
said drafts and checks drawn in that form as binding
upon said company and its funds and in reality as the
paper of said company itself; and that the said draft was
drawn in favor of said Betts and delivered to him in con-
sideration of and for a large quantity of petroleum oil
which had then and there been purchased by the said
company of said Betts and delivered to said company,
the said Compton giving said draft as the draft of said
company, and said Betts receiving the same as the draft
of said company, and both parties understanding that the
said company was charged thereby, it being given for
the purchase-money of the oil so sold and delivered to
said company by said Betts as aforesaid ; that afterwards
and before the maturity of said draft, to wit: on the——
day of ———, 1874, the same was presented to the said
M. V. Bentley for acceptance, and the said Bentley ac-
cepted the same and in evidence thereof endorsed his
name upon the face thereof; that afterwards and before
the maturity thereof the said Betts endorsed and trans-
ferred the said draft to plaintiff, and on the 17th day of
September, 1874, the day of the maturity of said draft,
the same was duly presented to the said M. V. Bentley
at his office in Detroit, Michigan, and payment thereof
was demanded, which was refused, and the said draft was
then duly protested for the non-payment thereof, the
cost of which protest was $1.75, and the notice of said
protest was duly given to said company and the said
Betts. The said bill or draft with protest are filed with
the bill as exhibit " A."

The plaintiff also avers, that neither the said amount
of principal, charges of protest and interest thereon as
aforesaid, nor any part thereof has been paid to plaintiff,
but the same still remains entirely unpaid ; that by rea-
son of the execution, acceptance, endorsement and pro-

test of said draft as aforesaid, the said indebtedness is a charge against the said Bentley, the said company and said Betts, and that plaintiff is entitled to recover the same against them.

The bill further alleges, that the plaintiff has sued out an attachment in the cause against the property of the defendants, and that by virtue thereof the officer in whose hands the same was placed has attached and levied upon certain property belonging to the said company situated in said county of Ritchie to satisfy the said indebtedness.     The said bill or draft (exhibit "A") is as follows:

"(Dolls.) $300.     PETROLEUM, W. VA., July 1, 1874.

Seventy-five days after date, pay to the order of G. F. Betts, three hundred dollars, value received, and charge to account of
                                    " B. S. COMPTON, *Pres.*
" *To M. V. Bentley, Detroit, Michigan:*
     " No.——

Endorsed on the face : "M. V. Bentley." Endorsed on the back: " G. F. H. Betts, D. B. Devendorf. Pay First National Bank of Detroit, or order, for collection.
                              " WM. H. CONGER, *Cashier.*"
The said bill is also endorsed on the back thereof. " Protested for non-payment, September 17, 1874.
                         "A. G. HEGHAN, *Notary Public.*"

The protest is also filed as part of exhibit "A."
It appears that an order of attachment was duly sued out in the cause against the estate of said company and Bentley and levied upon personal property of the said company, and that the company released the property attached by giving bond with security under the provisions of the law in such case.    On the 18th day of October, 1875, on motion of the plaintiff by his counsel the said order of attachment was docketed.    It also appears that afterwards, on the 21st day of October, 1875, at a circuit court of said county of Ritchie the defendant, the

said company, appeared to the cause, and on its motion the court ordered the cause to be removed to the circuit court of Wood county to be proceeded in to final determination. On the 7th day of December, 1875, at a circuit court for said county of Wood, the cause was ordered to be docketed therein.

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

It appears that the defendant, the said company, filed its answer to the plaintiff's bill, in which it admits that said Bentley and Betts are non-residents of this State, and that the said company is a foreign corporation created and existing under and by virtue of the laws of the State of Michigan, and is a non-resident of this State, and that it has estate and effects in the said county of Ritchie, but denies that said Betts has, or had at the time of the commencement of this suit, any estate or effects in said county. The company also denies, that at the time of the commencement of this suit it was, or since has been or now is, indebted to the plaintiff, in the sum of $301.78, or any other sum, with interest from the 17th day of September, 1874, or for other time, and denies that said alleged indebtedness was created or accrued in the manner stated and set forth in the bill or in any other manner whatever. It admits, that on the 1st day of July, 1874, at the said county of Ritchie, the draft or bill of exchange in the bill mentioned, and bearing date on that day for the sum of $300.00 was drawn by B. S. Compton, president. The company also admits, that said Compton was its president at the time said draft or bill of exchange was so drawn, but denies that it drew the same, but says that whether said Compton signed said draft, intending thereby to make the same the draft of the company and to bind it thereby, it does not know, and therefore can neither admit nor deny the same and leaves the plaintiff to make such proof thereof, as he may be advised, but denies, that it thereby became, or was or is, its draft.

The Company denies, that said Compton had been previously or at any time authorized by it by its proper

officers or otherwise to draw or execute drafts, checks or other commercial paper in that or any other form, or to bind it or its funds thereby, and says, that whether it was long previous thereto, or has been since, the custom of said Compton to draw drafts, checks or other commercial paper in that manner, it does not know and therefore cannot state ; but it denies, that it ever was the constant or usual custom of said Compton to thus draw drafts, checks or other commercial paper to bind the company, and denies, that he did thereby bind the company ; and the company denies, that it was at the time of the drawing of the said draft, or at any other time, the constant or usual custom of the company to recognize or honor drafts or checks, drawn in that form, as binding upon it or its funds or as its paper, but on the contrary it says it has refused to recognize or pay paper thus drawn and still refuses ; that it cannot say, that paper has not been thus drawn that has been paid out of the companies funds, but denies, that such payment of other paper, if made, renders the company liable upon the paper in question.

The company also denies, that said draft was drawn in favor of said Betts and delivered to him in consideration of a large quantity of petroleum oil, which had then or there been purchased by it of said Betts, or which was then or there sold and delivered by said Betts to it, as alleged in the bill or in any other manner, and says that whether said Compton gave said draft or said Betts received the same as the draft of the company and with the understanding of both that the company was charged thereby or not, the company does not know or admit, but denies, that it was charged thereby, and denies, that it was given for oil sold or delivered to it in any manner.

The company denies, that Betts ever endorsed or transferred said draft to plaintiff, but says, if said Betts endorsed or transferred the same to plaintiff, it was without any consideration whatever, and with full knowl-

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

edge on the part of plaintiff, of the consideration for which said draft was given, as hereinafter stated and setforth. The company also denies, that said draft or bill of exchange was presented to the said Bentley at the maturity thereof, or at any other time, and payment demanded which was refused, and that the same was protested for non-payment as alleged, or in any other manner; and it also denies, that notice of protest was duly given to it, or in any manner given to it so as to make it liable upon said draft or bill of exchange. The company also says, that it does not know, whether said draft has been paid to plaintiff or not, and cannot therefore admit or deny the same; but it denies, that the same or any part thereof is due from it.

The company further says, that there is no consideration to uphold said draft or bill of exchange, and that there was none for the giving thereof, and if any ever existed, it wholly failed; that the same was drawn and delivered by said Compton as aforesaid to said Betts by way of an advance to said Betts on account of a quantity of oil, which said Betts agreed to, and was to deliver to said Compton, or to the company, to sell on commission, which he failed to deliver; that the oil, so to be delivered by said Betts, was wholly or in part oil owned by Betts and plaintiff jointly; that Betts did deliver a part of the oil, so agreed to be delivered, and failed to deliver the residue; that other drafts of a large amount, and amounting in all to from $3,000.00 to $5,000.00, were made and delivered to said Betts under said agreement; but that Betts failed to deliver oils to a much greater amount and value than the amount of the draft in question, and the consideration thereof wholly failed and was fully known to plaintiff; that Betts never transferred or delivered said draft or bill to plaintiff for value or *bona fide,* and plaintiff never paid any consideration for any transfer or delivery thereof to him, and the same at the commencement of this suit, as between plaintiff and Betts, was the property of Betts and did not in any man-

1830
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

ner belong to plaintiff, as the company is informed and believes; that afterwards, and while the same still belonged to Betts as aforesaid, there was a full and complete settlement and adjustment as between Betts, Compton and the company in relation to the failure of said Betts to deliver said oil as aforesaid and other matters between them; that at the time of such settlement and adjustment said Betts claimed to be, and was, the real holder of said draft or bill of exchange as between him and plaintiff; that at that time said Betts was found to be in arrears and indebted on account of said matters in some $1,200.00, as now, and in much more than the amount of said draft, arising out of the failure upon his part to deliver said oil as aforesaid, over and above the amount of said draft or bill of exchange, and after deducting such draft and the amount thereof from the amount so due and owing by said Betts, and at the time of such settlement and adjustment, the amount of said draft was deducted from the amount of said indebtedness of said Betts, and he agreed to surrender and deliver up said draft to said Compton or the company cancelled, and gave his obligation for the balance due by him to the company, a part of which the company transferred to other parties, and a part of which it still holds unpaid, and still due and owing from said Betts. And the company in this general way "denies all confederacy and conspiracy, if any charged or alleged in said bill, and denies each and every allegation, statement, charge or averment in said bill contained not herein and hereby sufficienty answered unto, admitted, denied or confessed," &c., and prays that the bill be dismissed, &c.

Depositions were taken and filed in the cause by the plaintiff and the company and some documentary evidence was filed, but I deem it unnecessary to state the evidence at this point. I will however hereinafter refer to such proofs as I deem necessary or material to a proper decision of this cause. It appears, that on the 2d day of October, 1877, at a circuit court held for the county of

Wood this cause came on to be finally heard upon the bill and exhibits filed therewith, the order of publication duly taken published and posted according to law, the order of attachment sued out in the cause, the answer of the defendant, The West Virginia Oil and Oil Land Company, and the plaintiff's general replication thereto, and the depositions taken in the cause by the plaintiff and The West Virginia Oil and Oil Land Company; and the court decreed thereon as follows: "Upon consideration whereof the court is of opinion, that the draft mentioned in said bill and filed therewith as exhibit 'A' was made by the said B. S. Compton for and on behalf of The West Virginia Oil and Oil Land Company, as its president and agent, having authority as such agent to bind the company by making said paper; that the said draft was given for a liability of the said company; and that the complainant was the holder of said draft for value at its maturity, without notice of any equities as between the said maker and the said G. F. H. Betts, in whose favor the said draft was drawn, the said draft having been endorsed and transferred by the said Betts to the said plaintiff, before the maturity thereof, and that the plaintiff is entitled to recover from The West Virginia Oil and Oil Land Company the amount of said draft and charges of protest, with interest thereon from the date of said protest. And the court is of opinion, that in the decision of this case it is not necessary to pass upon the objections noted by the plaintiff's counsel to questions and answers in the depositions taken on behalf of the said defendants in this cause; and as to said objections the court expressed no opinion. It is therefore adjudged, ordered and decreed, that the said plaintiff do recover from the said The West Virginia Oil and Oil Land Company the sum of $301.78, the amount of said draft and protest, with interest thereon from the 17th day of September, 1874, and his costs by him in his suit in this behalf expended, and that he have leave to sue out exe_cution thereof. And it appearing to the court that by

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.
virtue of the order of attachment sued out in this cause J. T. Utterback, a constable of Ritchie county, levied upon certain property of the said defendant, The West Virginia Oil and Oil Land Company, and that the said company, in order to release said property from said attachment, executed to the said complainant its bond in the penalty of $675.00, with W. Backus, Sands Gidley and J. J. Upton as sureties therein, which bond is dated the 29th day of July, 1875, and is conditioned for the performance of the judgment or decree in this cause, it is therefore ordered, that the plaintiff have leave to withdraw said bond from the papers of this cause by leaving an attested copy thereof in its stead. And it is further ordered, that any recovery had on said bond shall be applied in satisfaction of this decree."

From and to this decree the defendant, the West Virginia Oil and Oil Land Company, hath upon its petition and assignment of error therein obtained an appeal and *supersedeas*; and thus the cause is before this court for review and determination.

*Walter S. Sands*, for appellant, cited the following authorities :

3 W. Va. 285; 9 Gratt. 68; 1 Wash. 199; 21 Gratt. 291; 2 Smith L. C. 407; 9 N. Y. 571; 1 Dan. Neg. Inst. 439; 2 *Id*. 14; 7 Leigh 179; 11 Gratt. 260; 36 Mo. 130; 10 Mich. 547; 20 Johns. 637; 6 Hill 93; 6 Barb. 445; 13 Wend. 605; 12 N. Y. 551; 27 N. Y. 149; 5 Yerg. 108; 16 Pet. 1; 3 John. Cas. 438; 7. Johns. 311; 1 Cow. 359; 15 Barb. 28; 5 Johns. 68; 3 N. Y. 168; 14 N. Y. 167.

*C. C. Cole* and, *W. S. Cole*, for appellee, relied on the following authorities :

17 Wend. 40; 5 Wheat. 326; 19 Gratt. 354; 1 Cranch 345; 2 Dong. (Mich.) 124; 1 Zab. (N. J.) 683; 31 Ind. 87; 2 Conn. 680; Story Prom. Notes, § 69; *Id*. § 350; Angel & Ames on Corp. § 294; 21 Gratt. 293;

1880
Special Term.
_____
Devendorf
v.
West Virginia
Oil & Oil Land
Co.

12 Barb. 52; 22 Pick. 158; Story Agency, §§ 126–7 and notes; 14 Barb. 358; 1 Zab. (N. J.) 665; 20 Conn. 475; 1 Allen 502; 37 Ill. 371; 26 Vt. 569; 12 Smed. & M. 412; 11 Ohio 172; 11 Gratt. 260; 5 Smed. & M. 310.

HAYMOND, JUDGE, announced the opinion of the Court:

The first error assigned and relied upon by the appellant in its said petition is as follows:

" First. The court erred in deciding that the draft, mentioned in said bill and filed and exhibited therewith, was made by said Compton for and on behalf of The West Virginia Oil and Land Oil Company, as its president and agent, having authority to bind said company by making said paper, &c."

The counsel for the appellant in support of this assignment contend, that, " the paper sued upon was upon its face the promise or obligation of R. S. Compton, and the word ' Pres.' annexed to his signature was only *descriptio personæ*; that parol contemporaneous evidence was inadmissible to vary or contradict its term'; and if said evidence has been admitted and conside /d, its legal effect cannot be to contradict or vary the rms of the instrument. The instrument is not ambiguous in its terms."

On the other hand it is contended by the counsel for the plaintiff below, that " the addition of ' Pres.' to the name of Compton constitutes a patent ambiguity on the face of the draft, leaving it doubtful whether he intended to execute it in his individual capacity, or as president and agent of the company; and parol proof may be introduced to show what the intention was; and if it appear that he made it on behalf of the company, it will be bound, if he had authority to bind it by making negotiable or other paper."

The paper in question is sometimes called a draft and sometimes a bill of exchange in the pleadings and proceedings in the cause. I think it is perhaps proper to call it a bill of exchange.

In the 10th Amer. Ed. of Chitty on Bills, top pp. 32 and 33, it is said: " When a person has authority as agent to draw, accept, or endorse a bill for his principal, he should either write the name of his principal, or state in writing that he draws, endorses, or accepts as as agent, or *per procuration*, as 'by procuration of A. B. (*the principal*) E. F. (the agent). (1). For otherwise the act will not in general be binding on the *principal*, so as to subject him to be sued on the *bill or note* (a); though in some cases an informal mode of executing an authority will not vitiate. (x). The drawing, accepting, or endorsing as agent for another person may be effected by merely writing the name of the principal, as if he himself were actually the party signing; but the most explicit and regular course is to sign the name of the principal, and then immediately under it add '*per procuration* A. B.;' the agent writing his own name. (y). If an agent sign only his own name, whether as drawer, endorser, or acceptor, he will (unless in the case of a government-agent contracting on its behalf (z) (1), be considered as the principal, and be personally liable as such, *unless he add some restrictive or qualifying words* as '*sans recours*,' or '*without recourse to me*,' or ' drawn and endorsed to transfer the interest only, and not to incur any personal liability,' for it is a universal rule, that a man who puts his name to a bill of exchange, thereby makes himself liable, unless he states upon the face of the bill that he subscribes it *for* another, or by *procuration* of another, which are words of exclusion ; unless he say plainly ' I am the *mere scribe* ' he becomes liable. (a) (2)."

In the 5th Amer. ed. of Byles on Bills taken from the 9th London ed. at pp. 115 and 116 it is said : " The rule of law *as to simple contracts in writing*, other than bills or notes, is, that parol evidence is admissible to charge unnamed principals; and so it is to give them the benefit of the contract ; but it is inadmissible for the purpose of discharging the agent, who signs as if he were principal in his own name. (j). And the rule of law

is reasonable; for in the two former cases the evidence is consistent with the instrument, for it admits the agent to be entitled or bound; but in the latter case such evidence would be inconsistent with the terms of the instrument. (k). Yet it is conceived that the law as to negotiable instruments is different in one respect, to wit, that when the principal's name does not appear, he is not liable on a bill or note as a party to the instrument. (l) (1)."

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

In Story on Promissory Notes, § 68, it is said: "The true and best mode of an agent's signing or endorsing a promissory note for his principal, where he means to make the latter, and not himself, personally responsible therein, is to sign or endorse the same ' A. B.' (the principal) by his attorney or agent ' C. D.' If the signature be ' C. D., for A. B.' (the principal), it will be equally available, although not so formally correct. But, in the practice of common life, there are many deviations from this course; and occasionally they give rise to great embarrassments in endeavoring to ascertain, whether, in the actual language used, the agent is personally bound, or the principal alone is bound, or both. Neither is it possible to extract from the authorities any consistent rules to guide us in this matter of interpretation. Where, indeed, upon the face of the instrument the agent signs his own name only, without referring to any principal, there he will be held personally bound, although he is known to be, or avowedly acts as, agent." See same, § 69, and Story on Agency, §§ 269, 278.

Story on Bills at § 76 says: "As to agents, if they draw, or endorse, or accept bills in their own names, although on account and for the benefit of their principals, they are held personally liable, because they alone can be treated on the face of the bills as parties. If they would bind their principals they should endorse or accept the bills in the name of their principals, and sign for them and in their names."

In the 2d American ed. from the 5th London ed. of Bayley on Bills, pp. 72, 73, it is said: "If a bill or note

be signed by one person as the agent of another, the agency being stated on the instrument, the principal is bound, if the person acting as agent had authority; but if he had no authority, he is liable himself to the holder of the bill or note in a special action on the case in England and Massachusetts, and in New York as a party to the instrument. (d). And the agent cannot be bound as a party to the instrument, if the principal is bound by it, (e), although the agent should misapply the money raised upon it to his own private use. (f)." The same author at pages 74 and 75 says: "If a bill be signed 'A. B., *agent*,' the name of the principal no where appearing upon it, A. B. is liable as drawer of the bill, and not the principal, although A. B. had authority to draw bills in his principal's name. (g). A subsequent ratification of a note given in the name of one person by another, as his attorney, has been held not to exonerate the person acting as attorney from his personal liability on the note, he having had no sufficient authority when he signed the note. (k). When the principal authorizes his agent to draw bills for him, and the agent draws a bill signed with his own name, but on the face of the bill directing the drawee to charge it to account of his principal, the principal is liable to the holder of the bill, in equity, if not at law. (l). If in such a case the agent has no original authority to draw, but if the transaction be subsequently ratified by the principal, the latter will be liable as drawer. (l)." The same author at page 68 says: "Where a bill or note is drawn by an agent, executor or trustee, he should take care, if he means to exempt himself from personal responsibility, to use clear and explicit words to show that intention." See also page 72.

In American Leading Cases by *Hare & Wallace*, 5th ed., pp. 763 and 764, it is said: "In *Mechanics Bank* v. *Bank of Columbia*, 5 Wheat. 326, and *Bank of Utica* v. *Magher*, 18 John. 314, 346, it was held, that when an instrument had on its face the appearance and form of a corporate transaction, but was signed by an officer of the

corporation without the addition of his official title, it 1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co. was either to be taken as an official act, supposing the marks of official character to predominate on the face of the instrument, or else parol evidence was to be received of the nature and circumstances of the transaction. (1). In cases of this kind, where there is a doubt or ambiguity on the face of the instrument, as to whether the person means to bind himself, or only to give an evidence of debt against an institution or body of which he is a representative, parol evidence is undoubtedly admissible; not indeed to show the intention of the parties to the contract, (See *Harkin* v. *Edwards*, 1 Ia. 431.); but to prove extrinsic circumstances, by which the respective liability of the principal and agent may be determined; such as, to which the consideration passed and credit was given, and whether the agent had authority, and whether it was known to the party that he acted as agent. The extent of the principle as to the admissibility of parol evidence appears to be this: Where the names of both principal and agent appear on the instrument, and the contract, though in the name of the agent, discloses a reference to the business of the principal, so that the instrument, as it stands, is consistent with either view, of its being the engagement of the principal or of the agent, parol evidence is admissible in a suit against the agent to charge him by showing, either that credit was given to him, or that he had not authority to bind the principal by that contract, which would create a consideration for a liability on his part, or to discharge him by proving that the consideration passed directly to his principal, as that, credit having been given to the principal alone, the consideration of the note signed by him was an antecedent liability on the part of the principal, and that the other party knew that he acted as agent, and thus destroying all consideration for liability on his part; and in like manner, to charge or discharge the principal by similar circumstances. (1). But if the name of the principal does not appear in the instrument,

and the instrument is without ambiguity, and asserts a positive liability on the part of the person contracting, parol evidence to bind the principal or to discharge the agent is not admissible.   See *Savage* v. *Rex et al.*, 9 N. H.; 263, 270," &c.

In *Haskins* v. *Edwards & Turner*, 1 Ia. 426, it was held : " If the name of the principal and the relation of agency be stated in the writing, and the agent is authorized, the principal alone is bound, unless the intention is clearly expressed to bind the agent personally. The question of liability does not turn upon the *form* of the signature, but upon the fact whether the relation of principal and agent is fairly disclosed upon the face of the paper."

In *Pentz* v. *Stanton*, 10 Wend. 271, it was held : " A person may draw, accept or endorse a bill *by his agent,* and it will be as obligatory upon him as though it was done in his own hand ; but the agent in such case must either *sign the name* of the principal to the bill, or it must appear on *the face of the bill* itself in some way or another, that it was in fact done for him, or the principal will not be bound ; the particular form of the execution is not material, if it be substantially done in the name of the principal."   See opinion of the judge who delivered opinion of the court, at pp. 374, 375, 376.   This case was an action at law.

In the case of *Stackpole Jr.*, v. *Arnold*, 11 Mass. 26, it was held, that " where one makes a written contract intending to act therein as the agent of another and to bind his principal, it is necessary, that it should appear in the contract itself, that he acts as such agent.   Oral testimony is not admissible to contradict, vary or materially affect, by way of explanation, any written contract, whether within the statute of frauds or not : provided the contract is perfect in itself and is capable of a clear and intelligible exposition from the terms of which it is composed.   But this rule does not prohibit the showing by parol evidence a want of consideration for a promissory

note in an action between the original parties to it, or an illegality in the transaction, or a fraud practiced upon the party to be charged. The case of receipts is also exempt from the application of the rule." This was also an action at law and the contract involved was a negotiable note or notes. See *Eastern Railroad Co.* v. *Levi Benedict et al.*, 5 Gray 565, and *Bank of British North America* v. *Hooper et al.*, 5 Gray 571:

In the case of the *Eastern Railroad Co.* v. *Levi Benedict et al.*, 5 Gray 561, it was held, that " on a written order, made for a consideration moving from the Eastern Railroad Company to deliver property to ' J. S., president of the Eastern Railroad Company,' the company may sue in their own name." In the case of *Bank of British North America* v. *Hooper et al.*, 5 Gray 567, it was held, that " a bill of exchange, drawn by an agent in his own name, does not bind his principal though made for his benefit and containing a direction to the drawee to charge the amount thereof to his account. A bank, which has discounted bills drawn in his own name by the agent of a disclosed principal, cannot sue the latter, nor prove against his estate in insolvency, although the proceeds are applied by the agent to his use." See also case of *Leadbitter* v. *Farrow*, 2 M. & S. 345. In the case of *De Witt and Terbert* v. *Walter*, it was held, that " where H. had authority as agent to bind the defendant under the name of ' The Churchman,' the defendant was not liable upon a note given by such agent and signed ' D. H., agent for the Churchman,' but containing no further expression of intention to bind the defendant ; that such note did not purport to be the note of ' The Churchman,' but of H. ; and that the words ' Agent of the Churchman ' were mere words of description." See also *Mc Williams* v. *Wills*, 1 Wash. (Va.) 199, 202.

In that case Judge Lyons in delivering the opinion of the court at page 202 says : " It was as unimportant to name the appellant, *treasurer*, in the declaration, as it would have been to give the appellee the title of *colonel*,

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.
because he was styled so in the agreement. We cannot presume, that any circumstance existed to do away the responsibility of the appellant, because none are found, nor even pretended," &c.

In the case of *Early* v. *Wilkinson & Hunt*, 9 Gratt. 68, the syllabus is :

" 1. $913.50. ·    KANAWHA Co., October 3, 1850.

" Four months after date, I promise to pay to Wilkinson & Hunt, without offset, negotiable and payable at the office of discount and deposit of the Bank of Virginia, at Charleston, Kanawha county, $913.50 for value received.

" ROBERT H. EARLY,
" (*for Samuel H. Early*).

" Held : Upon the face of the paper it is the note of Robert H. Early.

" 2. Parol evidence is admissible to prove that the note was intended to be the note of Robert H. Early.

" 3. Proof that another note was executed by Robert H. Early to another person, about a month previous to the execution of this, with the same addition excepting the brackets, and that the reason given by him for the addition of the words ' for Samuel H. Early' was ' that in the case of the death of either his brother or himself the note would show on what account or for whose benefit it was given;' held to be competent evidence ; the only question being why were these words ' for Samuel H. Earley,' written at the foot of the note ?

" 4. But if the evidence was improper, yet as the court had properly instructed the jury, that upon the face of the paper it was the note of Robert H. Early, the admission of the evidence could not have been injurious to the defendant ; and it is therefore no ground for a reversal of the judgment."

In this case Judge Moncure at page 70 says : "An agent, executing a note for his principal, supposing him to have authority to execute such note, may bind either himself or his principal. Whether the one or the other

be bound depends upon the intention of the parties; and that intention must appear from the note itself. If the name of the principal be not referred to in the note, the agent who signs it is alone bound. The difficulty arises only in those cases (which however are numerous) in which the name of the principal is referred to either in the body of the note or at the foot of it. 'As the form of words in which contracts may be made and executed,' says Chief Justice Shaw, in *Bradlee* v. *Boston Glass Co.*, 16 Pick. 347, ' are almost infinitely various, the test question is, whether the person signing proposes and intends to bind himself, and adds the name of another to indicate the capacity or trust in which he acts, or the person for whose account his promise is made; or whether the words referring to a principal are intended to indicate that he does a mere ministerial act, in giving effect and authenticity to the act, promise and contract of another. Does the person signing apply the executing hand as the instrument of another, or the promising mind of a contracting party?' "

1880<br>Special Term.<br>———<br>Devendorf<br>v.<br>West Virginia<br>Oil & Oil Land<br>Co.

Again, Judge Moncure, at pp. 73, 74, 75, says: "There is certainly no better settled general rule of law than that parol evidence is inadmissible to contradict or vary the terms of a written contract. There is another general rule, which has been established and recognized by a long series of decisions, but which has been said to be not perfectly accurate as a definition, that parol evidence is admissible to explain a latent but not a patent ambiguity. There are cases which would seem rather to fall under the head of patent than of latent ambiguity, in which parol evidence has been held to be admissible. Judge Story, in the case of *Peisch* v. *Dickson*, 1 Mason 9, after referring to the rule in regard to patent and latent ambiguity, says : ' The difficulty lies not in the rule itself, but in applying it to particular cases, where the shades of distinction are very nice. There seems indeed to be an intermediate class of cases, partaking of the nature of the latent and patent ambiguities; and that

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

is, where the words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations according to the subject-matter in contemplation of the parties. In such a case I should think, that parol evidence might be admitted to show the circumstances, under which the contract was made, and the subject-matter, to which it referred.' The case of a note signed by one person for another, at least when it is doubtful on the face of the note which of the two is intended to be bound, would seem to be one of the intermediate class referred to by Judge Story, or to be governed by the same principle. The doubt in that case is, whether the person, who signed the note, intended to bind himself or another; and that doubt may be perfectly removed by proof of the surrounding circumstances, in regard to which a court of construction may be placed by parol evidence as nearly a possible in the situation of the party, whose written language is to be interpreted; the question being, what did the person thus circumstanced mean by the language he has employed? 1 Greenl. Ev. §295. 'The patent ambiguity of which Lord Bacon speaks,' says the same author, 'must be understood to be that which remains uncertain to the court after all the evidence of surrounding circumstances and collateral facts, which is admissible under the rules already stated, is exhausted.' *Id.* §300. And 'no judge is at liberty to pronounce an instrument ambiguous, until he has brought to his aid in its interpretation all the lights afforded by the collateral facts and circumstances, which, as we have shown, may be proved by parol.' 'The language may be inaccurate,' says Wigram, in his admirable treatise on the interpretation of wills pages 175 and 176; 'but if the court can determine the meaning of this inaccurate language without any other guide than a knowledge of the simple facts, upon which from the very nature of language in general its meaning depends, the language, though inaccurate, cannot be ambiguous. The circumstance that the inaccuracy is ap-

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

parent on the face of the instrument cannot in principle alter the case.' It has been decided in several cases, that where an ambiguity arises on the face of an instrument, whether the person signing it, or the person for whom it is given, was intended to be bound, parol evidence is admissible to remove the ambiguity. *Mechanics' Bank of Alexandria* v. *The Bank of Columbia*, 5 Wheat. 326, unanimously decided by the Supreme Court in 1820, is a leading American case on the subject and expressly decides the question affirmatively. So does the case of *Lazarus* v. *Shearer*, 2 Ala. 718. In the case of *Bradlee* v. *Boston Glass Co.*, 16 Pick. 347, before cited, parol evidence was introduced by the plaintiff without objection, and commented on by the learned Chief Justice in delivering the opinion of the court. Indeed we have seen no case, in which parol evidence for such a purpose has been held to be inadmissible. The case of *Stackpole* v. *Arnold*, 11 Mass. 27, was much relied on by the counsel of the appellant in this case to show, that such evidence is inadmissible. In that case the name of the principal did not appear on the face of the note; and it is a familiar and well settled principle, that he cannot be bound in such case. The note on its face was plainly the note of the person whose name was thereto signed, and of no other person; and to have admitted parol evidence, to show that it was intended to be the note of another, would have been directly contrary to the rule, which declares such evidence inadmissible to contradict a written contract. The great object of the judge in his learned opinion in that case was to show, that this rule is not confined to specialties, or even contracts under the statutes of fraud, but extends to all written contracts. Not one word is said in the whole opinion, which indicates, that parol evidence would be inadmissible, where it is doubtful on the face of the instrument, which of several persons was intended to be bound; but the contrary is indicated through the whole opinion. After laying down the general rule of exclusion of such evidence, on page

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

31 he adds: 'provided the contract is perfect in itself, and is capable of a *clear and intelligible* exposition from the terms of which it is composed.' Again on page 32 he says, that 'a contract in writing, perfect in itself, and containing no *ambiguity on the face of it incapable of explanation,* cannot be enlarged or diminished by oral testimony.' And on page 33 in speaking of the notes on which the suit was brought, he says, 'they have *no ambiguity upon the face of them,*'" &c.

Again Judge Moncure at pages 76 and 77 says: "There is perhaps no question of greater difficulty in the administration of justice, than that which often arises in regard to the relevancy of evidence to the issue. It is the duty of the court, says Phillips, 'to confine the evidence to the points in issue, that the attention of juries may not be distracted, nor the public time needlessly consumed; but in deciding, that the evidence of any particular circumstance is not receivable upon this ground, the court must impliedly determine, that no presumption to be drawn from that circumstance ought properly to have an effect upon the mind of the jury.' It is obvious therefore that a great deal must necessarily be left to the discretion of the court of trial."

Again the judge says, at pp. 77 and 78: "We do not mean to deny the correctness of the cases cited from East and Peake by the counsel of the appellant, (7 East. 108; 5 Day's Esp. Peake Ca. 95,) nor to contend that proof of one contract may be proof, by inference, of another. We mean only to say, in the language of Phillips, (ed. of 1849, vol. 4 p. 461,) that it 'may frequently be very proper, and in some cases absolutely necessary, to look beyond the transaction, which is the immediate subject of enquiry, into previous transactions, for the purpose of making a just inference as to the knowledge of the parties, their motives or intention;' and to say, that this case or the supposition above made may come within that principle."

In the case of *Rich. Fred. & Pot. R. R. Co.*, v. Snead & Smith, 19 Gratt. 354, it was HELD:

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

1. "R., the president of a railroad company, signs his name without any addition to a due bill, acknowledging that there is due to S. S., $484.00, in full of labor performed on cottage-lot of the railroad company. It being uncertain on the face of the note, whether the labor was performed for R. or the company, parol evidence is admissible to ascertain that fact." The note in this case was as follows:

"Richmond, May 31, 1856.   $484.00.   Due Judge H. Snead and Benjamin E. Smith, four hundred and eighty-four dollars, in full of labor performed on cottage-lot of the railroad company, the same payable on demand, with interest from date.           ED. ROBINSON."

In the case of *Walker* v. *Christian*, 21 Gratt. 291, it is stated in the syllabus: "1. Bought of Maj. J. W. twenty-seven head of cattle, weighing thirty-eight thousand one hundred and fifty-two pounds, at six and a half cents, $2,479.88.   Mr. W. M. T., you will please settle with Maj. W. the above account.   J. C."   In assumpsit by W. against C. to recover the amount, the paper being of doubtful meaning, C. may introduce parol evidence to show, that T. was chief commissary for the district in the Confederate States service, and that C. was his agent, and as such bought the cattle of W., who knew he was buying as such agent.   2. The principles on which the liability of agent, both private and public, will be ascertained and fixed, considered by *Moncure, J.*"

In this case Moncure, Judge, at page 295, says: "Where a promissory note is made, or a bill of exchange drawn in the name of the agent, without showing the name of the principal on the face of the instrument, as a general rule the agent only, and not the principal, is liable.   The intention of the parties in such a case is too plainly expressed to admit of any doubt, or to require any aid from the light of surrounding circumstances."

In the case of *Scott* v. *Baker*, 3 W. Va. 285, it was

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.
held : " 1. The plea of *nil debet* renders it necessary that the note produced in evidence should correspond with that described in the declaration. Therefore there is a fatal variance, and a note should be excluded as evidence, where it is described as a note for ' $342.00,' payable ' two months after the date thereof,' and the note offered in evidence is for ' $342.25,' payable ' sixty days after date.' 2. The following is held to be the individual note of the parties signing it, and they are personally liable therefor :

'$342.25.                              DECEMBER 19, 1866.

' Sixty days after date, we promise to pay to the order of J. W. Baker, three hundred and forty-two 25-100 dollars, at Second National Bank of Parkersburg ; value received.

' WILLIAM SCOTT,
' *President Blannerhasset Oil Co.*
' W. H. HOMER,
' *Treasurer.*' "

By an examination of this case it will be seen, that there was no parol evidence offered in the case to explain any doubt arising on the face of the note as to whether it was the note of the Blannerhasset Oil Company or that of said Scott and Homer. The decision was simply rendered upon the face of the note in the absence of any parol evidence whatever. Doubtless the ruling of the court upon the question before it was right—that is, that the paper in question was *prima facie* the note of said Scott and Homer. I do not regard the case as settling any other question, which might have been raised by the offer of parol evidence tending to show, that the company was incorporated, and that the consideration, for which the note was given, was to the company, and that Scott and Homer as the president and secretary of the company were authorized as such to give the note of the company, &c. See *Hogson* v. *Dexter*, 1 Cranch 345, upon the question of construing certain descriptions of contracts.

In *Cahill and Smith* v. *The Kalamazoo Mutual Insurance Co.*, 2 Doug. (Mich.) 124, it was held, that "Parol evidence is admissible in such action, to prove that A., who signed the policy as president, was acting president of the company, and that the policy was therefore valid and binding upon the company. A corporation is bound by the acts of its officers *de facto;* and it need not be shown that they were regularly elected, in order to make their acts binding upon the corporation. *Semble*."

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

In the case of *Mechanics Bank of Alexandria* v. *The Bank of Columbia*, 5 Wheat. 326, it was held according to the syllabus, that where a check was drawn by a person, who was the cashier of an incorporated bank, and it appeared doubtful upon the face of the instrument, whether it was an official or a private act, parol evidence was admitted to show that it was an official act. The acts of agents do not derive their validity from professing on the face of them to have been done in the exercise of their agency. The liability of the principal depends upon the facts, 1. That the act was done in the exercise, and 2. within the limits of the power delegated. In ascertaining these facts, as connected with the execution of any written instrument, parol testimony is admissible."

In the case of *Nash* v. *Towne*, 5 Wall. 689, it was held according to the syllabus, that " 4. When an agent has entered into a written contract in which he appears as principal, parol evidence is admissible to show, with a view of exonerating him, that he disclosed his agency and mentioned the name of his principal at the time the contract was executed." But Judge Clifford who delivered the opinion of the court in that case at pp. 703, 704 says : " Where a simple contract, other than a bill or note, is made by an agent, the principal, whom he represents, may in general maintain an action upon it in his own name, and parol evidence is admissible, although the contract is in writing, to show that the person named in the contract was an agent, and that he was acting for his principal. Such evidence, says Baron

1880
: Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

Parke, does not deny, that the contract binds those, whom on its face it purports to bind, but shows that it also binds another ; and that principle has been fully recognized by this Court.   Cases may be found, also, where it is held that the plaintiff may prove by parol that the other contracting party named in the contract was but the agent of an undisclosed principal, and in that state of the case he may have his remedy against either, at his election.   Evidence to that effect will be admitted to charge the principal or to enable him to sue in his own name, but the agent, who binds himself, is never allowed to contradict the writing by proving that he contracted only as agent, and not as principal."   See also *Beckham* v. *Knight et al.*, 9 Mee. & W. 78.

In *Kean* v. *Davis* 1 Zab. 583, it was held as follows : " 1. A bill of exchange signed J. K., President of E. & S. R. R. Co., leaves it ambiguous on the face of it, whether J. K. individually, or the company, is the drawer. 2. In such case without any explanatory proof J. K. individually would be considered the drawer of the bill. 3. When a written instrument is not ambiguous or uncertain on its face, parol proof cannot be resorted to, to show what was the real intention of the parties.   But in cases of ambiguity on the face of the instrument, as in the above bill, it may be introduced to explain, which of two doubtful constructions was the intent of the parties; and it may be introduced to show, who really intended to sign an instrument, as that an endorsement on the back of a note was intended for a signature as jointmaker."

In *Brockway* v. *Allen*, 17 Wend. 40, the action was upon a promissory note signed by the defendants, adding to their signature " Trustees of the First Baptist Society of Brockport."   It was held by the court upon demurrer, that the defendants *prima facie* were personally liable, but that such presumption of liability might be rebutted by proof, that the note was in fact given by the makers as agents of a corporation for a debt due from

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

the corporation to the payee, and that they were duly authorized to make such note as the agents of the corporation.

In *Palmer* v. *Stevens*, 1 Davies 471, the action was brought upon a promissory note in these words :

" On demand for value received we promise to Nathaniel Palmer one thousand dollars on interest.

" G. STEVENS.

"W. G. S."

The plaintiff proved that the note and the signatures were all in the handwriting of William G. Stevens, the defendant, whose initials (W. G. S.) were signed to the note. The defence was, that the note was given as the note of G. Stevens & Sons, who alone were liable, and that it was signed by the defendant as their clerk, his initials having been appended simply to indicate that he signed it. Evidence in support of this defence having been offered, a verdict was rendered for the defendant. Upon a motion for a new trial the court in delivering their opinion say : " If· the defendant by placing his initials under the name of G. Stevens intended to bind himself as a maker of the note, there can be no doubt of his liability in that character, and this was a point to be considered by the jury," &c. See also *Manor* v. *Chandler*, 9 Mass. 335.

In *Lazarus* v. *Shearer*, 2 Ala. (N. S.) 718, the action was by the payee against the acceptor of a bill of exchange addressed to and accepted by Gilbert Shearer, president of the Selma and Tennessee Railroad Company. The plea was the general issue. On the trial the plaintiff having offered in evidence the bill of exchange with the acceptance thereon, the defendant proposed to prove, that the bill was drawn for a debt which the company owed the drawer ; and that the holder of the bill, at the time the same was drawn, was fully apprised by the drawer, that it was intended to be drawn upon the defendant as president of the company, and not in his private capacity. The evidence was objected to, but admit-

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.
ted, and a verdict rendered for the defendant. Upon a writ of error the Supreme Court after an elaborate argument upon this point sustained the ruling of the judge at the trial.

In *Brown* v. *The Butchers and Drovers Bank*, 6 Hill 443, it was held, that a party may become an endorser of a bill or note by any mark or designation he chooses to adopt, provided it be used as a substitute for his name, and he intends to be bound by it. Per Nelson, Chief Justice: " An endorsement is valid, though written with a lead pencil. Where a party placed the figures ' 1, 2, 8,' upon the back of a bill of exchange, by way of substitute for his name, intending thus to bind himself as endorser, held, valid endorsement, though it appeared he could write."

In *Rogers* v. *Coit et al.*, 6 Hill 322, the syllabus is: "The agent of a company, with the assent of his principals, and in order to discharge their debt, drew a bill of exchange in his own name on a part of them, payable to the creditor, which after being accepted was endorsed and delivered to a third person, who brought an action against all the members of the company to recover the amount. HELD, that there was no privity between them and the plaintiff, and that the action was not maintainable either upon the bill itself or the original consideration. Otherwise, had it clearly appeared that the name in which the bill was either drawn or accepted was one of those by which the company allowed themselves to be known and represented."

In the case of *Fuller et al.* v. *Harper et al.*, 3 Gray 334, it was held, that a bill of exchange stamped in the margin "Pompton Iron Works" and concluding thus: "Which place to account of Pompton Iron Works. W. Burt, agent," purports to be the bill of the Pompton Iron Works, and is binding on the person carrying on the manufacture of iron in that name, if Burt was his authorized agent. In this case Judge Metcalf in delivering the opinion of the court at pages 341 and 342 says:

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

"The appeal in this case brings before us the single question, whether the two drafts of August and November, 1847, can be legally proved against the separate estate of H. Gray. The main objection, which is made to their being so proved, is, that it does not appear on the face of them, that he is individually a party to them, and that parol evidence is not admissible to prove that he is. But we deem it clear upon the face of the drafts, that they purport to be drawn by the Pompton Iron Works through the agency, authorized or unauthorized, of W. Burt. And it appears, from the facts agreed, that Burt was the agent of these iron works, authorized by H. Gray and by H. Gray & Co., to make drafts on H. Gray & Co., for expenses incurred for machinery and materials required in the manufacture of iron by these iron works; and that these drafts were made for expenses so incurred. We deem it equally clear, that parol evidence would be admissible to show that the Pompton Iron Works were H. Gray and no one else; and therefore that fact is to be taken as rightfully in the case. *Byrant* v. *Eastman*, 7 Cush. 111; *Melledge* v. *Boston Iron Co.*, 5 Cush. 158; *Williamson* v. *Johnson*, 2 D. & R. 281, and B. & C. 146; Collyer on Part. (3d Amer. ed.) § 411 and note."

In the case of *Conro et al.* v. *Port Henry Iron Company et al.*, 12 Barb. 27, it was held among other things according to the syllabus as follows : " A corporation is liable upon a draft drawn or accepted by a party authorized for the purpose, though the corporate name be not mentioned in such draft, if it be drawn or accepted under a name adopted by the corporation. Notice to the agent of the corporation is notice to the corporation itself. The tendency of modern decisions is to assimilate the actions, rights, duties and liabilities of corporations to those of individuals. A subsequent ratification by the principal of the act of his agent is equivalent to an original authority. A corporation is liable for the acts of its authorized agents, although the agent contracts in his own name

1880
Special Term.

———

Devendorf
v.
West Virginia
Oil & Oil Land
Co.
without disclosing that of his principal, if the exclusive credit be not given to the agent. The principal and agent cannot by any contrivance between themselves release the former from his liability. Adding the title *agent* to the signature of the drawer of a bill is notice, that the party does not mean to be personally liable. Where the principal is known, he alone is liable."

In this case Judge Willard, who delivered the opinion of the court, at page fifty-three says: " To create a liability in the Port Henry Iron Company, as a corporation, it is by no means essential that the corporate name should be used in the drafts. It is enough that they were drawn or accepted under a name adopted by them by a party authorized for that purpose by the company. That authority need not be in writing, nor proved by a resolution of the board of directors. It may be shown by the conduct of the officers of the corporation, their ratification of it by paying drafts so drawn, or by other acts of an unequivocal character indicating their assent thereto. A subsequent ratification is equivalent to an original authority. *Moss* v. *The Rossie Lead Mining Co.*, 5 Hill 137; *Story on Ag.* 293, § 245 ; *Rogers* v. *Kneeland,* 10 Wend., affirmed in error, 13 *Id.* 114; *Moss* v. *McCollough,* 7 Barb. 279."

In *Been* v. *The Phœnix Glass Company et al.,* 14 Barb. 358, it was held, that " when the directions given by the managers of a company to one of its officers are merely verbal, it is difficult for those, who have dealings with the company, to prove them by any direct evidence. In such cases, where the acts of the officers are performed at the office of the company, are of public character, and are numerous and long continued, it is reasonable to presume that they are in conformity with the instruction of the managers. If the directors of a company, either through inattention or otherwise, suffer its subordinate officers to pursue a particular line of conduct for a considerable period without objection, they are as much bound to those who deal with the officers

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

in ignorance of their want of authority, as if the requisite power had been directly conferred."

"In *Hovey* v. *Magill*, 2 Conn. 680, it was held, that "where A. being the authorized agent of a manufacturing company gave to B. a promissory note, in the body of which were these words: ' I promise to pay,' &c., the signature being 'A., agent for the M. M. Company,' and it appeared that A. had been in the constant habit of signing notes in this manner, with the knowledge of the company, which had been regularly paid, it was held, that he was not personally liable."

In *Roberts* v. *Austin*, 5 Whart. (Pa.) 313, it was held as follows: " 1. In an action in the district court for the city and county of Philadelphia by the payee of a bill against the drawer the defendant filed an affidavit of defence, stating that he, as agent of R. J. (the drawer of the bill) purchased certain merchandise of the plaintiff; that the name of his principal was disclosed by him to the plaintiff at and before the time of the purchase; that the merchandise was furnished for the principal upon the credit and for the use of the principal; and that the bill of exchange was given by him to the plaintiff in payment for the said merchandise, &c. *Held:* That this was a sufficient affidavit of defence to prevent a judgment."

In the case of *Lindus* v. *Bradwell*, 7 Eng. C. L. R. and 5 Man. G. & S. 582, and 5 C. B. 583, the syllabus is as follows: "A bill of exchange addressed to the defendant by the name of ' William B.,' was accepted by his wife, by writing across it her own name, 'Mary B.' There was no evidence of any express authority in the wife to accept the bill; but on its being presented to the husband, after it had become due, he said he knew all about it, that the bill was a millinery bill (for which the husband appeared to be liable) and that he would pay it very shortly: *Held*, That he was liable as acceptor." This was an action of *assumpsit*. The first count stated, that on the 12th of August, 1844, one Wil-

liam Lindus made his bill of exchange in writing, and directed the same to the defendant, and thereby required the defendant to pay to the order of him, the said William Lindus, £30, two months after the date thereof; that this period has elapsed; that the defendant accepted the said bill, and that the said William Lindus endorsed the same to the plaintiff, &c. There was also a count for £30, for money alleged to be due upon an account stated. The defendant pleaded as to the first count, that he did not accept the said bill, and to the second count, *non assumpsit*. Issue thereon. The cause was tried before Maule, Judge, at the second sitting for Middlesex Easter term. It appears that the bill was drawn by William Lindus, and addressed to the defendant, as William Bradwell, (his true name being William David Bradwell,) but that it was accepted by the defendant's wife, in her own name, "Mary Bradwell." There was no evidence that this was done by her with her husband's authority. But one Henry Lindus, another brother of the plaintiff, who was called as a witness, stated, that on the 7th day of February last he saw the defendant on the subject of the bill, which he then exhibited to the defendant, who after looking at it said: "I know all about it; it is accepted by my wife; it is one of those millinery bills for transactions with Mrs. Ruse; I will pay it shortly." On the part of the defendant it was submitted, that the count on the bill was distinctly disproved and that there was no case to go to the jury upon the account stated, for that a promise to pay, in the absence of any original liability, was a mere *nudum pactum*. The judge, however, directed the jury to find for the plaintiff for the amount of the bill and interest (£32. 7s,) reserving leave to the defendant to move to enter a nonsuit, or a verdict for him upon either or both issues; or if the court shall think the plaintiff entitled to recover upon the account stated only, to reduce the damage to £30. And Talferend, Sergeant, in

Easter term, moved accordingly. And Maule, Judge, at pp. 589, 590, says:

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

"Without expressing any opinion upon the matter, I directed a verdict for the plaintiff, reserving leave to the defendant to move to enter it for him, if the court should be of opinion, that he was not liable. Upon the best consideration I can give to the very elaborate argument we have heard, I think, the defendant is bound by the acceptance of his wife. The evidence of Henry Lindus shows, that the defendant represented himself to be a person bound by the bill, after his attention had been positively called to it. He says he knows all about it, that it is accepted by his wife, and mentions the particular transaction out of which it grew, and promises to pay it shortly. The irresistible inference from this is, that he considers the bill as one that he is liable to pay. He in effect says, that his wife was authorized by him to accept this particular bill in the way she did. At any rate the conversation fairly *admits* of that inference. He sees that his wife has written her own name across the bill, and recognizes it as done by his authority. The question is, whether it is competent to a man to give his wife such an authority. *Cotes* v. *Davis*, a case that has been since recognized, seems to be a strong authority upon the subject. But upon principle it seems to me, that there is no objection to the plaintiffs recovering upon this bill. The acceptance is in writing and therefore satisfies the statute. 1 & 2 G. IV. ch. 78. If a man says to his wife, accept such a bill, drawn upon me, in your own name, unless he intends to be bound by that, he means nothing. Unless such an acceptance operates to charge him, it has no operation at all. The defendant clearly meant to bind himself, if in point of law he could do so. It is said that a drawee cannot bind himself otherwise than by writing his name on the bill. But suppose the drawee with his own hand accepts the bill by writing another name across it, will he not be liable? Here the defendant has by the hand of his wife written

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

" Mary Bradwell " on the bill. If he had done that with his own hand, it clearly would have been his own acceptance; and I know of no rule of law that makes such an authority void. It is difficult to say, that, if the defendant had written his true name, William David Bradwell, across the bill, that would not have been an acceptance that would have bound him; and yet, inasmuch as that would not be the same name in which it was addressed, if the argument of the defendant's counsel is well founded, he would not be liable. I admit that nobody but the defendant could accept this bill so as to charge him; but he has accepted it by the hand, and in the name of his wife; and that I think, is a sufficent acceptance to bind him."

Criswell, Judge, said in the same case : " I am of the same opinion, *Cotes* v. *Davis* involves a principle that goes very nearly the whole length of what we are now deciding. There an endorsement by a married woman was held sufficient to pass the property in a note, which could only pass by the husband's endorsement, as, also appears from *Barlow* v. *Bishop*. In *Cotes* v. *Davis* it was objected, that no title to a bill of exchange or promissory note could be made through the endorsement of a *feme covert,* and that what the defendant did after the bill had become due, must be immaterial, if he was not previously liable. But Lord Ellenborough said : ' The husband may authorize the wife to endorse bills of exchange or promissory notes as his agent; and after the acknowledgments and promises (a) of the defendant in this case it may reasonably be presumed against him, that Mrs. Carter had authority from her husband to endorse the note in question.' And he further says: ' We may fairly carry the presumption one step further, and presume that the husband authorized her to endorse notes in the name by which she herself passed in the world.' Still, it must be the husband's endorsement. That principle was again recognized in *Presturick* v. *Marshall* and *Prince* v. *Brunatte.* The jury must be assumed to have

found here, that the wife had authority to accept this bill; and, as the defendant by his subsequent conduct showed, that he was satisfied with the mode in which the authority had been exercised, we must likewise assume, that the jury also found that he authorized her to bind him in that particular way. It is by no means an unusual thing for a bill of exchange to be drawn upon persons trading under a style, that corresponds with the name of one member of the existing firm; and yet bills so drawn and so accepted are perfectly good. (a). So here, the bill having been accepted and in this form by the authority of the defendant, he is clearly liable upon it." In this case V. Williams, Judge, concurred with the other two judges.

1880
Special Term.
_____
Devendorf
v
West Virginia
Oil & Oil Land
Co.

In this case, decided in 1848, the argument of counsel was elaborate, and both American and English decisions were cited—among others the case of *Pentz* v. *Stanton*, 10 Wend. 271, &c.

In the case of *Van Reimsdyk* v. *Kane et al.*, 1 Gall. 630, it was held, that "if one partner in a voyage on joint account be authorized by the others to take up money on the credit of the whole concern, and draw bills therefor on a house at Amsterdam, and the partner take up money and draw a bill for the same, directing it *to be charged to the account of all the partners*, but it is signed by himself only, it seems such bill is binding on all the partners (c); at least equity will enforce payment thereof against all the partners in favor of the payee of the bill, who has trusted the money on the faith of the joint credit. In equity such a bill drawn under such circumstances would be deemed to have been guaranteed as to acceptance and payment by all the partners. The statute of frauds does not apply to such a case; for the guaranty is not for the payment of the debt of another, but for the debt of the guarantees. If no original authority to draw were given, but subsequently the whole transaction was ratified by all the partners,

22

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.
such ratification would be *equi pollent* with an original authority." See also *Clark's ex'rs* v. *Van Riemsdyk*, opinion of Judge Marshall 9 Cranch commencing at page 194.

In the 7th American ed. of Smith's Lead. Cas. it is said : " In *Truman* v. *Loder*, 11 A. & E. 595, the point was expressly decided : ' 1. Parol evidence said the Lord Chief Justice, in that case, is always necessary to show, that the party sued is the person making the contract and bound by it; whether he does so in his own name, or in that of another, or in a feigned name, and whether the contract be signed by his own hand, or that of an agent are enquiries not different in their nature from the question,—who is the person who has just ordered goods in a shop? If he is sued for the price, and his identity made out, the contract is not varied by appearing to have been made by him in a name not his own. *The Salmon Falls Manufacturing Co.* v. *Goddard*, 14 How. 446, 455 ; and in a case of *Lindus* v. *Bradwell*, 5. C. B. 583, the court of common pleas held, that the drawee of a bill of exchange, accepted by his wife in her own name, but by his authority, was liable upon the bill as acceptor."

Again in the same work at page 379, it is said : " In the *Bank of North America* v. *Hooper*, 5 Gray 567, the court refused to allow a recovery against one man on a note made by another on proof that the latter was acting as his agent, and said that the rule that a principal may be liable as a privy on a contract, in which his name does not appear as a party, does not embrace negotiable instruments. The same point was decided in *Pentz* v. *Stanton*, 10 Wend. 271 ; *Leadbeater* v. *Farren*, 5 M. & S. 345 ; and *Davis* v. *Clarke*, 6 Q. B. 16, and would seem to be well settled on both sides of the Atlantic. A man may, however, make the signature of another virtually his own by using or allowing it to be used as such in the course of his business, and will under these circumstances be as much bound, as if his own name was affixed to the instrument in question : *Lindus* v. *Bradwell*, 5 C.

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

B. 583.   In *Fuller* v. *Hooper*, 3 Gray, 334, the defendant was held liable on a draft requesting the drawee to charge the amount to ' the account of the Pompton Iron Works,' and signed ' H. Burt, agent,' on proof that the Pompton Iron Works belonged to, and were worked by him, although his name did not appear in the business, which was conducted for his benefit by Burt.   The court said, that evidence might always be given to show, that the defendant had contracted under an artificial name, and the case turned in common with that of *Truman* v. *Loderante*, 369, on the principle that he, who is the real contracting party, will be bound, whether the agreement is authenticated by his signature or that of a third person.   A similar decision was made in the *Bank of Cape Fear* v. *Wright*, 3 Jones, 376 ; and other instances may be found of a like nature :  *Medway Cotton Manufactory* v. *Adams*, 10 Mass. 360 ; 6 Hill, 443."

The same work at pages 379 and 380 after referring to the case of *Roberts* v. *Austin*, 5 Whart. (*ubi supra*) 313, says : " The weight of authority, however, clearly is, that when the body of the contract contains apt words to charge the agent, he will be personally responsible for its fulfilment, notwithstanding the addition of qualifying words to his signature implying that he is acting in an official or representative capacity," and cites a number of authorities in support thereof ; but cites also the case of *Leach* v. *Blew*, 8 Smed. & M., 221, where a promissory note made by the defendants " as trustees," was interpreted as imposing a fiduciary or official, and not a personal responsibility, and cites also 1. American Leading Cases, 761, 5th ed.

In the same work at page 380 it is further said : " The current of the more recent cases is accordingly in favor of viewing the principal as bound by and entitled to take advantage of the contract of the agent, even when it purports to be made solely with the latter, and does not disclose that he is acting in a representative capacity ; *Beckham* v. *Drake*, 9 M. & W. 79 ; 11 *Id.* 515; 2 House

of Lords Cases 577; *Hubert* v. *Borden*, 6 Whart. (Pa.) 79. It seems, however, to be very generally conceded, that no recovery can be had on a bill or note made by an agent against any one who is not a party to the instrument, although given in the course of a transaction, in which he was interested as a principal, and for a consideration moving to him. *Allen* v. *Coit*, 6 Hill 218; *Rogers* v. *Coit, Id.* 322; *The Bank of North America* v. *Hooper*, 5 Gray 567."

From the decisions and authorities, to which I have referred, there seems to be no little apparent conflict between them, as to how far parol evidence may be resorted to, and under what circumstances, to fix liability upon a principal upon a bill of exchange, draft or other negotiable paper made by an agent. I have consulted a great number of authorities, both American and English, upon the subject, and have cited them in this opinion with the view of arriving at a correct conclusion in the case at bar. After the best consideration I have been able to give to the question and the authorities cited, I have arrived at the conclusion, that while the courts should generally refuse to allow a recovery against one person on a negotiable instrument made by another on proof that the latter was acting as his agent, yet a person may make the signature of another virtually his own by using or allowing it to be used as such in the course of his business; and that he will, and should under such circumstances when clearly proved, be as much bound, as if his own name were affixed to the negotiable instrument in question. I think as Judge Cowen did in *Rogers* v. *Coit et al.*, 6 Hill 322, that where it clearly appears that the name in which the bill in question was either drawn or accepted, was one of those by which the company allowed themselves to be known and represented, and that fact is clearly shown, the company should be held liable thereon under circumstances. I also concur with Judge Nelson as said by him in *Brown* v. *The Butchers and Drovers Bank*, 6 Hill 444, "that a person may become bound by

any mark or designation he thinks proper to adopt, provided it be used as a substitute for his name," and with the principle decided in *Lindus* v. *Bradwell*, and 3 Gray *ubi supra*. But the courts in applying this principle should be careful to limit its application to the class of cases to which it properly belongs, and not so apply it as to ignore other well established principles applicable to negotiable instruments and encroach upon grounds to which it does not properly apply and should not be applied.

The next question to be considered is: Does the principle of law which I have deduced govern the case at bar, and should it be so held upon the facts proven? This enquiry makes it necessary to consult the admissions and other evidence appearing in the cause. And first, it is clearly shown, that the said B. S. Compton was, at the time he drew and signed the bill in question, and for some time before, the president of the defendant, a corporation. Indeed this fact is not denied. 2d. To my mind it clearly appears from the evidence, that at the time said Compton, president as aforesaid, made the bill in question, he was the authorized agent of the defendant with full power and authority to make such a bill for and on behalf of the defendant in its business as its president and agent. 3d. That at the time said Compton made said bill, he was acting as the president and as such agent of the defendant, and that said bill was made by him as the defendant's president and agent, and in the business of the defendant and for a valuable consideration moving from the drawee, Betts, to the defendant alone. 4th. That it was the custom of the said Compton, as the president and acting agent of the defendant in its business for some time before the drawing of said bill to draw similar bills, signing them with his name "B. S. Compton, president," and sometimes "B. S. Compton," and that such bills so made and signed were always recognized and taken up by the defendant as its own paper. 5th. That it had been the custom of the defendant for

*[margin:]* 1880 Special Term.

Devendorf v. West Virginia Oil & Oil Land Co.

Syllabus 2.

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

some time before to execute bills and drafts in the manner and in the name of the drawer to the bill in question, and such paper was always recognized by the defendant, and paid by it as its paper, and as owing it. 6th. That the bill in question was drawn and signed by the said B. S. Compton, and delivered to the drawee as and for the bill of the defendant. 7th. That it was endorsed and passed by the drawee, (Betts,) to the plaintiff for valuable consideration before its maturity as the bill of the defendant. And 8th, that after said bill had matured, and after the protest thereof, and in June, 1875, the defendant by its said president and agent promised said Betts in the presence of the plaintiff, that the said bill would be paid to the plaintiff in money or oil, which was never done.

From these facts I feel authorized under the authorities and decisions upon that subject (*ubi supra*) to conclude and hold, that the defendant had, before said bill was made and delivered, authorized its president to make and deliver the bill in question, signed "B. S. Compton, Prest.," to represent and bind the defendant as the bill of the defendant, and that said bill is the bill of the defendant.

Some question is made by the counsel for the appellant in this case as to the sufficiency of the protest of the bill on its face. But I consider that question has become immaterial in the cause as the bill alleges the presentment, demand and dishonor of the bill and substantially notice thereof to the defendant. And it is proven that after the maturity of the bill and its presentment and dishonor, the defendant by its said president and agent promised to the drawee (Betts) in the presence of the plaintiff to pay the same to the plaintiff. In the case of *Moore* v. *Ayers,* 5 Smede & M., it was held, "that an allegation in a declaration against the endorser of a note of a demand and notice is sustained by a proof of a promise to pay after maturity by the endorser. In 2 Dan. on Negotiable Instruments, at page 135, §

1110, under the head of "*By whom and to whom waiver of demand, protest, and notice must be made*, it is said: "The promise to pay, in order to constitute a waiver, should be made to the party entitled to demand payment, and, if made to an entire stranger, it is not evidence of a waiver of *laches*; but it might be evidence that due presentment was made and notice given. But when the promise is made to the holder, it inures to the benefit of all who acquire the bill or note through him; and so will any agreement or understanding or arrangement between an endorsee and the maker inure to the benefit of an endorser in a suit against the endorser." "In Virginia it was held, that where the drawer of a protested bill, who was sued, called for proof of notice, and it was proved, that when he was applied to for payment, he acknowledged that the debt was a just one, and said he would pay it, it was a waiver of all notice, though nothing was said about notice in the acknowledgment, and that instructions, that 'unless the said acknowledgment was made with a knowledge of all the facts of the case as to the *laches* of the holders of the said bill, the said evidence was not to be received,' were properly refused by the court below. And in a subsequent case the doctrine was reiterated. It will be observed, that in neither of these cases was there any proof of any *laches*; but the doctrine which they recognize is, that such proof is absolutely precluded by the waiver." 2 Daniel on Nego. Instruments, § 1151, pp. 171 and 172; *Walker* v. *Laverty*, 6 Munf. 487; *Pate* v. *McClure*, 4. Rand. 169.

In Byles on Bills 4th American ed., top page 324 and side page 203, it is said: "Proof of protest of a foreign bill is excused, if the drawer had no effects in the hands of the drawee, and no reasonable expectation that the bill would be honored; or if the drawer has admitted his liability, by promising to pay. 'By the drawer's promise to pay,' observes Lord Ellenborough, 'he admits the existence of everything which is necessary to render him liable. When called upon for payment of the bill, he

1880
Special Term.
———
Devendorf
v.
West Virginia
Oil & Oil Land
Co.

1880
Special Term.

Devendorf
v.
West Virginia
Oil & Oil Land
Co.

ought to have objected, that there was no protest. In-stead of that he promises to pay it. I must therefore presume he had due notice, and that a protest was regularly drawn up by a notary.'"

It appears in this case that the consideration for the endorsement of the bill by Betts to plaintiff was a debt for money loaned by the plaintiff to said Betts. There is no doubt that a pre-existing debt of the drawer, maker or acceptor is a valid consideration for his drawing or accepting a bill or executing a note, and indeed is as frequently the consideration of negotiable paper, as a debt contracted at the time, and it is equally valid and sufficient consideration for the endorsement and transfer to the creditor of the bill. And the best considered, as well as the most numerous authorities regard the creditor, who received the bill or note of a third party from his debtor either in payment of, or as collateral security for his debt, as entitled to the full protection of a *bona fide* holder for value, free from all equities which might have been pleaded between the original parties." 1 Daniel on Neg. Instruments, page 145 § 184.

I do not think the evidence in this cause shows, that the drawee put said note in circulation for a fraudulent purpose. And certainly it does not appear, that plaintiff has in any way been connected with fraud in the transaction. He appears to be a *bona fide* holder of the bill for value, and is entitled to protection as such against all equities which might have been pleaded between the original parties.

The appellant's second assignment of error is: " That the court erred in not passing upon the validity of the depositions." It does not appear that exceptions were filed and brought to the notice of the court to the depositions for want of validity of such depositions, or that the hearing of the cause was objected to. But it is stated in the middle of the decree as follows : " And the court is of opinion, that in the decision of this case it is not necessary to pass upon the objections noted by the plain-

tiff's counsel to questions and answers in the depositions taken on behalf of the said defendants in this cause, and as to said objections the court expressed no opinion." By reference to the depositions it is seen, that the objections of plaintiff's counsel referred to were noted by the commissioner as questions or answers were made by the witnesses. I cannot see that the defendant was injured by the court not deciding upon each objection so made and noted to each question or answer, and specifying its decisions thereon. It is not usual in practice to pursue this course. It does not appear that the defendant asked the court to pass upon the said objections of plaintiff, before the cause was heard or submitted ; nor does it appear that the court sustained said objections. But on examination of said depositions of the defendant and the said objections of plaintiff's counsel noted therein I am unable to see how the defendant is injured by the non-action of the court, because, if each objection had been overruled, still the decree is substantially right ; and if sustained, the defendant would have the benefit of such ruling here.

For the foregoing reasons I am unable to see any substantial error in the said decree of the circuit court of the county of Wood, rendered in this cause on the 2d day of October, 1877 ; and the same must therefore be affirmed with costs and damages to appellee Devendorf according to law against the appellant.

JUDGES GREEN AND MOORE CONCURRED.

JUDGMENT AFFIRMED.