## Case No. 16,872.

### VAN REIMSDYK v. KANE et al.

[1 Gall. 630.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1813.

EQUITY—BILL AGAINST EXECUTORS OF DECEASED PARTNER — PARTNERSHIP BILL OF EXCHANGE — GUARANTY—STATUTE OF FRAUDS—AUTHORITY OF PARTNER—COMPETENCY OF WITNESSES—DECREE.

1. Equity will enforce against the executors of a deceased partner, or joint contractor, payment of a bill of exchange, where the survivors are insolvent.

See Jenkins v. De Groot, 1 Caines, Cas. 122; Hamersley v. Lambert, 2 Johns. Ch. 508; Gow, Partn. 358, 359.

2. If one partner, in a voyage on joint account, be authorized by the others to take up money on the credit of the whole concern, and draw bills therefor on a house at Amsterdam, and the partner take up money and draw a bill for the same, directing it to be charged to the account of all the partners, but it is signed by himself only, it seems such bill is binding on all the partners. See Greenl. Ev. §§ 112, 177, and cases cited. At least equity will enforce payment thereof against all the partners in favor of the payee of the bill, who has trusted the money on the faith of the joint credit.

[Cited in Wallace v. Agry, Case No. 17,096; Winship v. Bank, 5 Pet. (30 U. S.) 574.]

3. In equity, such a bill, drawn under such circumstances, would be deemed to have been guarantied as to acceptance and payment, by all the partners.

4. The statute of frauds does not apply to such a case; for the guaranty is not for the payment of the debt of another, but of the debt of the guarantors.

5. If no original authority to draw were given, but subsequently the whole transaction was ratified by all the partners, such ratification would be equi-pollent with an original authority.

[Cited in brief in Woodward v. Cowing, 41 Me. 11.]

6. In general, in a bill in equity, the answer of one co-defendant is no evidence against another. But this rule does not apply to the case, where the defendants are all partners in the same transaction; for in such case, the answer or confession of either is evidence against the others. Field v Holland, 6 Cranch [10 U. S.] 8, 24, S. P. See [Clark v. Van Reimsdyk] 9 Cranch [13 U. S.] 153, 156.

[Cited in brief in Bispham v. Patterson, Case No. 1,441.]

[Cited in brief in Bridge v. Gray, 14 Pick. 58. Cited in Grafton Bank v. Moore, 13 N. H. 101; Mann v. Locke, 11 N. H. 249; Martin v. Dryden, 1 Gilman, 209; McElroy v. Ludlum, 32 N. J. Eq. 831; Porter v. Bank of Rutland, 19 Vt. 416.]

7. One partner, who is jointly liable with the others, is a good witness against them in a bill in equity.

8. In a bill in equity to obtain satisfaction of a joint debt out of the estate of a deceased partner, on account of the insolvency of the survivors, no decree need be had against the survivors, although they may be liable to pay the debt, their insolvency being apparent.

This was a bill in equity, the object of which was, to obtain satisfaction out of the separate estate of John Innes Clarke, Esq., deceased, of a debt alleged to be due from said Clarke, and Messrs. James Monroe, Samuel Snow, and Benjamin Monroe, who survived the said Clarke, but had become insolvents under the Rhode Island act. The bill charged, that on the 28th of February, 1805, Mr. Clarke, and the said Messrs. Monroe, Snow & Monroe (who then were partners in trade under the firm of Monroe, Snow & Monroe) were joint owners of the ship Patterson, Clarke owning one half, and the firm of Monroe, Snow & Monroe the other half. That they fitted her out on a voyage from Providence, R. I., to Batavia, in the East Indies, and appointed the said Benjamin Monroe supercargo. That the ship carried out on said voyage certain goods on their joint account, and also certain funds in freight, to be invested in a return cargo, of the profits of which the ship owners were to receive forty-five per cent. in lieu of freight, and were to pay the supercargo's commission. That for said voyage the said Benjamin Monroe received instructions from the freighters of said funds, in what manner to invest the same, and also parol instructions from the ship owners, to manage and conduct the affairs of said voyage in such manner, as he should think most for the interest of the ship owners; and authorizing him, in case he should be deficient of funds of the ship owners, to complete the lading of said ship at Batavia, to take up money for that purpose on the joint account of said owners; and in case he should think it best or judge it necessary, to draw bills of exchange therefor on Messrs. Daniel Crommelin & Sons in Amster-

dam. That the said voyage was performed, and the vessel safely arrived, with a full cargo, at Boston, without any money having been taken up, or bills drawn under the authority aforesaid. That in March, 1806, the said ship owners fitted out the said ship on a second voyage to Batavia, with a quantity of wine and other merchandize on board, on their joint account, and also with funds on freight, as in the preceding voyage, and appointed the said Benjamin Monroe supercargo, with instructions and authority as in the preceding voyage. That the ship, on said second voyage, duly arrived at Batavia, where the outward cargo, except thirty pipes of wine, was sold, and her return cargo taken on board. That the said wine was left at Batavia for sale, and the supercargo, to complete his cargo in conformity to his instructions and authority, on the 3d of November, 1806, contracted for, took up and received from the complainant, for the joint account of the said ship owners, the sum of 21,488 guilders, equal to $8,595.20, and invested the same money for their joint account in the return cargo, and drew a bill of exchange, in favor of the complainant, on Messrs. Daniel Crommelin & Sons, for the same money, as follows, viz. "Batavia. November 3d, 1806. Exchange for 21,488 guilders. At nine months after sight of this my first of exchange, second of the same tenor and date unpaid, pay to the order of the Hon. William Vincent Helvetius Van Reimsdyk, twenty-one thousand four hundred and eighty-eight guilders, value received, and charge the same, with or without further advice, to account of John Innes Clarke, Esquire, and Messrs. Monroe, Snow & Monroe, merchants, Providence, Rhode Island, North-America. Your obedient servant, Benjamin Monroe. To Messrs. Daniel Crommelin & Sons, merchants, Amsterdam." That the said Benjamin Monroe informed said ship owners and said Crommelin & Sons, by letter, of said draft. That said ship safely arrived, with her cargo, at said Boston, from her second voyage, in March, 1807; and the said supercargo, on his arrival, exhibited his accounts of the voyage, and of the taking up of said money and draft of said bill, to said ship owners, and that they, with a full and perfect knowledge of all the facts, received their portion of the cargo, including that purchased with the money so taken up, as aforesaid, and divided the same, or the proceeds thereof, according to their respective interests in said ship, without making any objections to the conduct of the said supercargo in taking up said money, or drawing said bill, or making arrangements for the payment of said bill. That in October, 1807, the said ship owners fitted out said ship on a third voyage to Batavia, in the same manner in all respects as in the preceding voyages, the said Benjamin Monroe still continuing supercargo as before. That soon after the ship sailed on said voyage, to wit, in June, 1807, the firm of Messrs. Monroe, Snow & Monroe became insolvent. That on the 25th of the same June, Messrs. Monroe, Snow & Monroe transferred to said Clarke their interest in said ship and her accruing freight and return cargo, for certain considerations altogether disconnected from their concerns as joint ship owners. That on the said ship's return from her third voyage, said Clarke took possession of her, received the whole freight and owners' share of the return cargo, including the whole proceeds of the said thirty pipes of wine left on the former voyage, and as a creditor of the said firm attached and obtained by process of law all the commissions of said Benjamin Monroe, as supercargo of said ship, and appropriated the whole property aforesaid to his own use, as a creditor of said firm. That said Clarke died on the 17th of September, 1808, leaving the defendants, Oliver Kane and Ephraim Bowen, and his wife Lydia Clarke, since dead, the executors of his last will, which was duly proved. That the said Clarke left assets greatly exceeding all his debts, &c. including the present demand. That Messrs. Monroe, Snow & Monroe were duly discharged as insolvents under the insolvent act of Rhode Island, on the 11th of April, 1809. That their estate, under said act, was assigned to certain assignees named in the bill, who received under the assignment the sum of $1,471, and no more. That on the 30th of December, 1807, the said bill of exchange was presented to Messrs. D. Crommelin & Sons for acceptance, who refused, and thereupon the same bill was duly protested, and due notice thereof given to the said ship owners; and afterwards the same bill was presented for payment, and refused, and protested for nonpayment, and yet remains unpaid; and that the said ship owners never, at any time since the drawing of said bill, had any funds whatsoever in the hands of said D. Crommelin & Sons. And the bill finally charged, that Monroe, Snow & Monroe ever since had been, and still were bankrupts and insolvents. The bill then concluded with a prayer for discovery and relief. The bill was originally brought solely against the executors of Mr. Clarke; but at a former hearing, upon the suggestions of the court, the bill was amended by making the insolvents and their assignees parties [Case No. 16,871]; and the said Benjamin Monroe having deceased since the last term, a bill of revivor had been filed against his administratrix, who had appeared and duly answered thereto.

Mr. Bridgham and T. Burgess, for plaintiff. Searle & Burrill, for executors.

STORY, Circuit Justice. The cause has now been argued upon the bill and answers and proofs of the parties, and the court is to pronounce its decision on the facts and on the law. And I am entirely satisfied, that all the material allegations of the bill are fully proved. Indeed the only fact, which seems strenuously

denied, is the original authority, supposed to have been given to Mr. Benjamin Monroe, to contract the debt and give the bill of exchange stated in the plaintiff's bill.

It is argued by the counsel for the executors, that independent of the testimony of Messrs. Monroe, Snow & Monroe, there is no evidence to prove the existence of such an authority; and that neither their answers, nor their depositions, are competent evidence to affect Mr. Clarke or his executors. As to the answers of Messrs. Monroe, Snow & Monroe, I admit that the answer of one defendant cannot, in general, be read against another co-defendant; otherwise, such co-defendant would be deprived of an opportunity of cross-examination. 3 P. Wms. 311, note H. But this rule is liable to exceptions; and, therefore, wherever the confession of any party would be good evidence against another, in such case his answer, a fortiori, may be read against the latter. Peake, Ev. 55. In cases of partnership, the confession of one partner, in relation to a partnership concern, is in general admissible in an action against the other. Peake, Ev. 55; Gilb. Ev. 51, 57. It is not evidence to prove the partnership itself; but that being once admitted or proved aliunde, the confession is then let in for all collateral purposes. It is admissible to take a case out of the statute of limitations (Whitcomb v. Whiting, 2 Doug. 652; Jackson v. Fairbank, 2 H. Bl. 340), and to establish not merely the amount, but the existence of a joint demand even when made after a dissolution of the partnership (Wood v. Braddick, 1 Taunt. 104). In Grant v. Jackson, Peake, 203, Lord Kenyon held the answer of a bankrupt partner, made before his discharge under the commission, to be good evidence against the others: although he expressed his doubts, whether, if it had been made after his discharge, it would have been admissible. His lordship said, the answer was not evidence for all purposes; it could not be received to prove the partnership; but that established, the answer of one may bind all.

In the case at bar, it is admitted on all sides, that the several voyages stated in the bill were for the joint account and benefit of Mr. Clarke, and Messrs. Monroe, Snow & Monroe. In these several adventures, they must be considered as engaging in a limited partnership, or joint concern. Whatever, therefore, in relation to the transactions of that concern, is admitted by one party, is evidence against all. If, at the time of giving their answer, Messrs. Monroe, Snow & Monroe were not discharged from the plaintiff's demand (as I still think they were not), the case would fall directly within the authority of Grant v. Jackson. If they were then discharged, notwithstanding the doubt of Lord Kenyon, I still consider their answer as admissible evidence. The good sense of the rule, as to the admissions of partners (and an answer is no more than an admission, though a very solemn one), is well expressed by Mansfield, C. J., in Wood v. Braddick, and fully supports the doctrine which I now hold.

But, admitting the answers of Messrs. Monroe, Snow & Monroe not to be admissible evidence, I should be glad to know, what is the legal exception to the competency of Messrs. S. Snow and J. Monroe, as witnesses in favor of the plaintiff. The general rule is, that where any defendant in a bill is not concerned in interest, either side may examine him as a witness; so where no material evidence is against him, and no decree can be had against him. Where a defendant is a party in interest, he cannot be heard as a witness in support of that interest. But if his evidence be sought for the purpose of charging himself, and in contradiction to his interest, there is no legal objection to his competency, if he chooses to testify. It is another question whether he can be compelled so to do. But, as a plaintiff in equity has a right to examine a defendant, as a witness, no objection lies in the mouth of the adverse party, unless such defendant be legally incompetent. Dixon v. Parker, 2 Ves. Sr. 220. In the present case, no decree is sought against Messrs. Monroe and Snow. If the fact of insolvency created a legal bar, they are no longer parties in interest, and no decree can be had against them. They would then be within the first part of the rule. If the act did not create a legal bar, they are called to charge themselves in connexion with Mr. Clarke, and so far from having an interest to support the plaintiff's bill, their interest lies the other way. "Quacunque via data est," they are clearly competent witnesses for the plaintiff; however otherwise it might have been, if they had been examined by the executors to defeat the bill.

It is quite immaterial to the plaintiff, whether the cause stand upon the answers or the depositions of Messrs. Monroe and Snow. In either case, the existence of an original authority in Mr. Benjamin Monroe, to draw the present bill of exchange in behalf of the ship owners is completely proved. I go, however, yet further; and consider, that independent of the answers and depositions of Messrs. Monroe and Snow, there is sufficient evidence attached to the answer of the executors, to relieve the cause from all difficulty on this point. Taking the letter of Mr. Benjamin Monroe, addressed to the ship owners on the day of the date of the bill of exchange (which informed them of the object, occasion and account, on which it was drawn, and the manner, in which the proceeds received thereon were invested on joint account), the subsequent accounts rendered by him to the ship owners, and settled with them, which contained a charge of the same bill; the receipt and division by the ship owners of the investment of such proceeds, not only without objection, but apparently with perfect satisfaction at his proceedings; I say, taking all these facts in connexion, I think it difficult to resist the impression, that Mr. B. Monroe's conduct was understood by all parties, as clearly within the scope of his original instructions. It matters not whether these were verbal or written instructions; they are equally to be regarded as binding upon the parties. If the facts (which

I have referred to) do not establish this original authority (as I think they do), they indisputably establish the fact of a complete and unlimited ratification of the proceedings. And, in such a case, a subsequent ratification will be to all intents and purposes equivalent to an original authority. The contract, if unauthorized, was not void; but voidable only at the election of the parties. The principles of eternal justice require, that no man should be permitted to build his fortune on the ruins of violated faith. If he will knowingly take the fruits of an unauthorized enterprise, undertaken for his benefit, and on his account, he must take them with their burthen. "Qui sentit commodum, sentire debet et onus." In my judgment, so far as this point goes, it is a matter of pure indifference to the plaintiff's right, whether the exchange was drawn under an original authority from the ship owners, or was subsequently ratified by them. · On all the grounds, however, which I have stated, I am of opinion, that the fact of authority in Mr. B. Monroe, to draw the exchange in question, is placed beyond the reach of legal doubt.

An objection to the plaintiff's right of recovery of rather a more technical nature is, that the bill of exchange is drawn by Mr. Benjamin Monroe in his own name, and not in the name of the joint owners; and therefore no remedy lies against the latter, under any circumstances, in favor of the plaintiff, because his title cannot reach beyond the parties to the bill. It is admitted in the answer of the executors, and indeed is demonstrated by the whole evidence, that the money, for which the bill was given, was taken up and actually applied for the joint account and benefit of all the concern. Under such circumstances, the objection is grossly inequitable, and I shall feel great consolation, if sitting in a court of equity, I can get rid of a mere technical nicety, and dispense justice according to the substantial merits of the cause.

The bill of exchange does not, in my judgment, purport to be drawn by Mr. Benjamin Monroe on his own private account; it is manifestly drawn on account of Messrs. Clarke, and Monroe, Snow & Monroe, and is to be charged to their account. That it was not drawn technically in the name of these parties, was probably owing to a mere mistake or ignorance of the legal distinction. It was drawn for moneys advanced to the concern, and was to be paid and charged on their account. In what character had Mr. Benjamin Monroe a right to draw on the joint funds? Certainly in no other character, than as a partner, or as an agent. When, therefore, he undertook to charge the joint funds on the face of the bill, every person, who became a party to it, must have considered him as acting, not on his own private account, but on account of the joint concern; not merely as incurring a personal responsibility, but as pledging the joint funds either under an authority vested in him as a partner or as an agent. It might be indiscreet to trust to his mere personal representation of his having such an authority; but if it actually existed, the other partners or joint principals must be in conscience and in equity bound by his acts to all persons, who trusted him on their account in faith of such authority. Mal. Lex Merc. 272. And if such authority did not exist, a subsequent ratification would enure to the full benefit of all the parties, who had advanced moneys, or acted on the faith of his stipulations. In this view, it is not very material to the present cause, what would be the mere legal construction in an action at law, as to what persons are parties to the bill, because the joint owners must be deemed to have contracted with the holder of the bill, that the drawer had a right to draw, and that they would supply funds to discharge it at maturity. In equity, therefore, upon the footing of such contract, I feel no difficulty in reaching all the parties, who were beneficially interested. I do not mean, however, to decide that even at law, this bill would be deemed the separate draft of Mr. Benjamin Monroe. Perhaps, under all the circumstances, it might be questionable, if, on the face of the instrument, it might not be susceptible of being construed a partnership draft. The decision on this point may perhaps be distinguished. See Thomas v. Bishop, Cas. t. Hardw. 1, 2 Strange, 955; Chitty (4th Ed.) pp. 40, 104; Mal. Lex Merc. 272. But even admitting the bill to be deemed the separate draft of Mr. Benjamin Monroe, there is another view of this case, in which the plaintiff's right to recover is conclusively established, and that is, that under the circumstances, the authority confided to Mr. Monroe must be deemed to have entitled him to draw in his own name on the joint funds, and to have guaranteed to the holder an acceptance and payment by the drawee. Suppose the joint owners had given written instructions to Mr. Benjamin Monroe as follows: "You are authorized to take up $20,000 on credit on our account; draw in your own name on Messrs. Daniel Crommelin & Sons, at Amsterdam, on our account, for that sum, or any less sum, and we engage that the drawee shall there accept and pay the same;" and such instruction had been shown to the plaintiff, who had advanced the money upon the faith thereof; I suppose, that no person would doubt, that he would have a perfect remedy at law against the owners. If the instructions were to draw on themselves payable to Messrs. Crommelin & Sons, I should have little doubt, upon the footing of Pillans v. Van Mierop, 3 Burrows, 1663, and Pierson v. Dunlop, Cowp. 573, notwithstanding the recent discussions in Johnson v. Collings, 1 East, 98, and Clarke v. Cock, 4 East, 57, in holding them bour l as acceptors. But in a court of equity, where the real nature of the contract is disclosed, and a remedy is sought upon the whole merits, there could be no difficulty in giving the plaintiff, under either of the supposed in-

structions, a complete relief against all the owners: for they must be held to be in effect the substantial acceptors or guarantors of the bill.

Now, saving that the authority in the present case is verbal and not written, I cannot distinguish the supposed from the real transactions; and that, in point of law, there is no difference between a written and a verbal authority, as to this point, is abundantly clear. Anon., 12 Mod. 564; Chit. Bills (4th Ed.) p. 35, etc.

It has been objected, that if the bill is to be considered as drawn by Mr. Benjamin Monroe, in his own name. in pursuance of an authority so confided to him, it is then an agreement by the joint owners to pay the debt of Mr. Monroe, and so within the statute of frauds. If the statute of frauds could apply to a foreign contract. made and to be executed in a foreign country (and I would ask if it can so apply?) there is no foundation for the suggestion. It is clear, that the debt would not be the debt of a third person, but the debt of the parties undertaking to pay it. It might be contended with much greater plausibility, that a verbal acceptance of a bill of exchange was within the statute. The same answer may be given to the same objection, which has been urged against the legal efficacy of the subsequent ratification.

On the whole, I am entirely satisfied, that the plaintiff has a clear equitable title against the executors in this suit; and I am glad, that as a foreigner, he is not deprived of his remedy, from an objection, which has no foundation in commutative justice. and is probably never dreamed of beyond the narrow walks of the common law.

The next consideration is, what ought to be the decree of the court? The executors contend, that it ought to be a decree against all the parties, according to their respective interests in the voyage. or at all events that Mr. Clarke's estate ought not to be charged beyond the moiety actually received by him.

No decree is sought by the plaintiff against Messrs. Monroe. Snow & Monroe. The ground of equitable jurisdiction is their absolute insolvency. They have become insolvent under the act of the state, and from that arises a pregnant presumption of a continuing insolvency, which must remain until removed by opposing proof. None such is produced; and the other evidence in the cause, so far as it goes. fortifies the legal presumption. There is no reason, therefore, why the court should make a decree. which the whole evidence shows must be vain and ineffectual; and I do not think. that the authorities require it. Lane v. Williams. 2 Vern. 292; Heath v. Percival. 1 P. Wms. 682; Bishop v. Church. 2 Ves. Sr. 101.

As to the other ground. that Mr. Clarke's estate ought not to be charged beyond the property received by him. I should be glad to have seen an authority to support such a discrimination. The ground of relief in cases of this nature is, that the joint contract is in equity deemed a joint and several contract, so that each party is liable to the whole; and that, though at law the remedy is against the survivor only, yet the estate of the deceased is pledged to indemnify the creditor against any deficiency. 2 Vern. 292; 2 Ves. Sr. 101, 371; 3 Ves. 277, 399, 573, 566. The whole amount of the bill remaining unpaid, and the surviving parties being utterly unable to pay it. Mr. Clarke's estate must therefore be charged with the whole.

I decree, that the plaintiff recover, against the executors of Mr. Clarke, the principal sum mentioned in the bill. ten per cent. damages for non-payment, and interest on these two sums from the time of non-payment to the time of rendering this decree, amounting to $11,526.14. in the whole.

Affirmed in principle by supreme court of United States. but sent back on another point. [Clarke v. Van Riemsdyk] 9 Cranch [13 U. S.] 158.