OF THE

# Kentucky Court of Appeals.

## JANUARY TERM, 1898.

CASE 1—PETITION ORDINARY—JANUARY 20.

103 1
f131 793

## Citizens' Bank of Dyersburg, Tenn. v. Millet.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. PLEADING—NOTES AND BILLS—WAIVER OF PROTEST.—In an action cn a bill of exchange, where the words "no protest" are written on the face of the bill sued on, it is not necessary to specifically aver in the pctition a waiver of protest.

2. COMMERCIAL LAW—NOTES AND BILLS—PRINCIPAL AND AGENT.—If a bill of exchange is drawn by an agent in his own name, on his principal, the existence of the debt against the principal is a sufficient consideration to bind the agent and render him liable therefor.

3. BILL OF EXCHANGE—PAROL EVIDENCE TO CONTRADICT OR EXPLAIN.—Parol evidence as to an agreement or understanding between the payee and the drawer of a bill of exchange, that the payee was to look alone to the payor for whom the drawer was acting as agent, is incompetent.

S. B. & R. D. VANCE FOR APPELLANT.

1. Millet having drawn the bill of exchange on the Hominy Mill Company in his own name, and not merely as their agent, it must be assumed that he intended to bind himself personally thereon, although it appears that he was in fact acting as their agent.

[1]

Story on Agency, 9th ed., 154, 155, 156, 157, 159 and 269; 2 Daniel's Negotiable Instruments, sec. 1095 and vol. 1, secs. 303 and 305; Pentz v. Stanton, 10 Wend., 271; 1 Alc. 14th ed., p. 635; Ledbetter v. Farrow, 2 S. L. C. (6th ed., 421); Thomas v. Bishop, 2 Stra., 955; Nash v. Towns (5 Wall., 689); 1 Randolph on Commercial Paper, sec. 382; Parsons on Notes and Bills, vol. 1, page 102 and 93-4.

2. Parol evidence is not competent to contradict a bill of exchange, or show a failure of consideration by the drawer thereof. Daniel on Negotiable Instruments, sec. 311; Fetters v. Muncie National Bank, 34 Ind., 251; Grocers Bank v. Penfield, 99 N. Y., 502; Dunn v. Western, 71 Me., 270.

3. The obligation of such a writing is as shown by its terms, and can be changed only by allegation and proof of mutual mistake in the drawing of it. Pack v. White, 78 Ky., 243.

YEAMAN & LOCKETT FOR APPELLEE.
    (Brief withdrawn.)

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

On the 18th of December, 1894, the appellant filed in the clerk's office of the Henderson Circuit Court its petition against W. W. Shelby and Wm. Soaper, a firm doing business under the firm name of the Henderson Hominy Mills, and against the appellant J. B. Millet. The petition reads as follows:

"The plaintiff, the Citizens' Bank, a corporation organized under the laws of the State of Tennessee, and doing business in the town of Dyersburg, Tennessee, says, that for several months past the defendant, W. W. Shelby and Wm. Soaper, were partners, doing business in the city of Henderson, and State of Kentucky, under the firm name of Henderson Hominy Mills, and while they were copartners to-wit, on November 30, 1894, the defendant, J. B. Millet, drew his certain draft, a bill of exchange of that date, payable at sight on the said Henderson Hominy Mills, and in

favor of plaintiff for the sum of $2,750.72, which said draft was presented to and accepted by the said Shelby and Soaper under the style of the Henderson Hominy Mills on the 5th day of November, 1894, and on the 8th day of November, 1894, said draft was duly presented to said defendants for payment, and payment thereof demanded, but no part thereof was paid. The said draft is herewith filed as part hereof, no part of which has been paid.

The plaintiff further says that the defendant, J. B. Millet, drew his certain other draft, or bill of exchange dated December 1, 1894, on the said defendants Shelby and Soaper, under the firm name of the Henderson Hominy Mills, payable at sight in favor of plaintiff for $2,475.53, which said bill of exchange was duly presented to defendants for payment and the payment thereof demanded of them, but no part thereof was paid. The said bill is herewith filed as part hereof. The consideration of the said bill of exchange was the sum of $2,475.53 paid by this plaintiff on the checks of the defendants, Shelby and Soaper, and used in payment for corn purchased for them by the defendant, J. B. Millet, as their agent. The said checks were paid upon the express agreement of the said defendants that they would accept the draft of the defendant J. B. Millet drawn upon them for the amount thereof when requested by this plaintiff. And he says by reason thereof the said defendants became, and are indebted to him in the said sum of $2,475.53, and are liable therefor on the said bill of exchange. The defendant, the Ohio Valley Banking & Trust Company and Jas. S. Alres have received from the said Shelby & Soaper a conveyance of their property in trust for the payment of their debts,

and have accepted said trust and have qualified as such trustees. No part of the said debt has been paid.

The premises considered, the plaintiff prays judgment against the defendants for the sum of $2,750.72, with interest from November 30, 1894, and for the further sum of $2,475.53, with interest from December 1, 1894, for their costs and for all proper relief.

S. B. & R. D. Vance, Attys. for Plaintiff."

The drafts referred to in the foregoing petition are as follows:

$2,750.72                  Dyersburg, Tenn., Nov. 30, 1894.
Buying department Henderson Hominy Mills.
At sight ...... Pay to the order of Citizens' Bank,
Twenty-seven hundred and fifty and 72-100 dollars.
Collect through Farmers' Bank, Henderson, Ky.
Value received and charge the same to account of
For corn.                        J. B. Millet.
To Henderson Hominy Mills,
No. 414, Henderson, Ky.

NO PROTEST.

$2,475.53.                  Dyersburg, Tenn., Dec. 1, 1894.
Buying department Henderson Hominy Mills.
At sight ...... Pay to the order of Citizens' Bank,
Two thousand and four hundred and seventy-five
53-100 dollars.
Collect through Farmers' Bank, Henderson, Ky.
Value received and charge the same to account of
For corn.                        J. B. Millet.
To Henderson Hominy Mills,
No. 415, Henderson, Ky.

NO PROTEST.

Shelby and Soaper made no defense, and judgment was rendered by default against them for the amounts claimed. The appellee Millet filed his separate answer, which reads as follows:   The defendant, J. B. Millet, for his separate answer to plaintiff's petition states:   That at the time the two drafts sued on were drawn and delivered to the plaintiff, the defendants, Shelby and Soaper were, as stated in the petition, partners in the name of the Henderson Hominy Mills, and were manufacturing great quantities of corn into hominy.   This defendant was the agent of said hominy mills for the purchase of corn to be shipped to them to be used in their said business.   Prior to the making of either of said drafts said hominy mills made an arrangement with the plaintiff bank by which it was agreed between said hominy mills and the plaintiff, that the defendant as the agent of said mills should purchase corn in the neighborhood of Dyersburg and give the checks of the said mill therefor on the plaintiff, and that at convenient periods the amounts paid by plaintiff on such checks should be balanced by drafts drawn on said hominy mills.   After said arrangement had been entered into, this defendant, as such agent, purchased large quantities of corn for said hominy mills, and gave checks therefor on plaintiff, signed Henderson Hominy Mills, by J. B. Millet, and afterwards at convenient periods gave to plaintiff drafts on said mills for the aggregate amount of such checks, all of which drafts prior to the one dated November 30, 1894, were paid by said hominy mills.   After the last draft that was paid, and prior to said November 30, this defendant as such agent purchased other corn and gave checks therefor on plaintiff signed as aforesaid amounting

to $2,750.72, when on said November 30, he gave plaintiff the draft for that amount, being the one first set forth in the petition. Afterwards and prior to December 1, 1894, he, as such agent, purchased other corn, and gave checks therefor on plaintiff signed as aforesaid amounting in the aggregate to $2,475.53, when on December 1, he gave plaintiff a draft for that amount, being the one secondly set forth in the petition.

Defendant alleges that in the giving of said drafts and in all of said transactions, he acted solely as the agent of said Henderson Hominy Mills, which fact was well known to and perfectly understood by the plaintiff, and the plaintiff accepted said drafts as the drafts of said hominy mills, and solely upon their credit, and not as the drafts or acts of this defendant in his own right, and in accepting said drafts the plaintiff gave credit solely to and looked for payment thereof solely to said hominy mills, and not at all to this defendant, and so far as this defendant is concerned there was no consideration whatever for either one of said drafts.

This defendant has no knowledge or information sufficient to form a belief that either of said drafts were ever presented for payment or payment thereof demanded. He prays to be dismissed with his costs and for all proper relief.

Plaintiff demurred to the first paragraph of the answer, but afterwards withdrew same, and filed its reply, which is as follows:

The plaintiff for reply to the first paragraph of the answer of J. B. Millet herein says, it denies that in giving the drafts mentioned in the petition, the defendant acted solely as the agent of the Henderson Hominy Mills, or that plaintiff ac-

cepted said drafts, or either of them as the drafts of said hominy mills or solely upon their credit, or that in accepting said drafts it gave credit solely to said hominy mills, but plaintiff says that said drafts were drawn as the drafts of the defendant Millet, and were accepted by the plaintiff as his drafts, and in reliance upon his credit, as well as that of the said Henderson Hominy Mills.

Plaintiff says that the arrangement for the payment of the checks of the said hominy mills was made by the defendant Millet, who, in consideration that plaintiff would pay said checks agreed, and promised that when thereunto requested by plaintiff he would draw his personal bill of exchange on the said hominy mills for the amount of the checks so paid and in payment thereof. And plaintiff says that the bills sued on were drawn in pursuance of said agreement, and as the personal bills of the defendant Millet and were accepted by plaintiff as such and in reliance upon the credit of the said Millet as the drawer thereof. Plaintiff prays as in its petition and for all proper relief.

S. B. & R. D. Vance, Attys. for Plaintiff.

Afterwards appellee filed the following rejoinder: The defendant Millet denies that the drafts sued on were drawn as his drafts, or were accepted by plaintiff as his drafts or in reliance upon his credit. Defendant denies that he in consideration that plaintiff would pay the checks of the Henderson Hominy Mills, agreed or promised to draw his personal bill of exchange on said hominy mills for the amount thereof or in payment of said checks. It is not true that in pursuance of such agreement the said drafts were drawn as the personal bills of the defendant or were accepted by

plaintiff as such or in reliance upon the credit of this defendant as the drawer thereof. Wherefore he prays as in his answer and for all proper relief.

A trial resulted in a verdict and judgment for the appellee. Appellant's grounds for a new trial are as follows: 1st. For error of law occurring at the trial and excepted to by the plaintiff as follows: In permitting evidence on behalf of said defendant that he signed the bills of exchange only as agent of the Henderson Hominy Mills. In giving to the jury instructions numbered 1 and 2, and in refusing to give instructions A. B. and C. asked for the plaintiff.

2d. Because the verdict is not sustained by sufficient evidence and is contrary to law.

Wherefore plaintiff moves the court to grant it a new trial as against said Millet. Plaintiff's motion for a new trial having been overruled, it prosecutes this appeal.

The plaintiff read as evidence the bills sued on heretofore copied, together with endorsements thereon showing that they had been assigned to some other parties for collection, but the assignments being regarded and treated as of no consequence. One of the bills appear to have been accepted by the Henderson Hominy Mills, and the other not accepted. The plaintiff also introduced C. T. Starling, who testified as follows: "I am cashier of the Farmers' Bank of Kentucky at Henderson." Being shown the said bills of exchange, the witness said that "the one of date November 30, 1894, being for 2,750.72, came to our bank for collection." He did not know whether the other one did or not, nor did he know whether they were ever presented to the Henderson Hominy Mills or to She'by & Soaper for payment. "The col-

lection clerk takes out the bills for collection, and I do not know to whom he presented them. Hugh Atkinson was our collection clerk at the date of these bills."

Sam Heilbronner was then introduced for plaintiff, who testified as follows: "In December, 1894, I was bookkeeper for the Henderson Hominy Mills. The bill dated November 30, 1894, was presented to the Henderson Hominy Mills on December 5, 1894, for payment and was accepted by me in writing on the face of it. The other bill was never presented to me." The word "refused," written on the back of it was written by Mr. David Banks. On cross-examination he said that after he accepted the bill it was never afterwards presented for payment as far as he recollected, and that when he accepted it, it was presented only for acceptance.

The plaintiff then introduced Hugh Atkinson, who testified as follows: That in December, 1894, he was discount and collection clerk in the Farmers' Bank of Kentucky at Henderson, Ky., that the bill in suit of date November 30, 1894, came to the Farmers' Bank for collection. "Our custom was when we received paper on the Henderson Hominy Mills to telephone to Mr. Heilbronner, and he would come up and accept them, and in this case I suppose he came to the bank, as the bill has his acceptance on it. "On cross-examination witness said, he did not know whether anything further was said to the Hominy Mills about paying the bill after it was accepted." The course is when a draft is accepted, I enter it up and file it to the date it was due. My father places it in open file, and they are not presented for payment any more. I have no recollection of this particular draft, but I identify it as one that passed through my hands by my writing on

the back of it.   A great many such drafts come to the bank, and I think we received four or five drawn in favor of the Citizens' Bank of Dyersburg on the Henderson Hominy Mills and signed like this one is signed.   I do not know what became of the draft dated November 30, 1894."

David Banks was next introduced for plaintiff, who testified as follows:   That he was cashier of the Planters' State Bank of Henderson, Ky. "The bill in suit, dated December 1, 1894, passed through my bank, having been sent to it for collection, and was presented by me to the firm of Shelby & Soaper for payment.   I telephoned them at the hominy mills that I had the bill for collection, and its payment was refused by them.   The word 'refused,' endorsed on the back of the bill was written by me."   On cross-examination witness said, he did not remember whether it was Shelby or Soaper to whom he talked through the telephone, but recognized the voice at the time, and knew it was one of them, and then knew which one it was.   "The distance from the bank where I was to the hominy mills is about eight or ten blocks.   That was the only presentation of the bill I ever made."   On re-examination witness said, he presented the draft immediately after it reached the bank through the mail as he was aware of the assignment made by Shelby & Soaper the day before. "My impression is that the assignment was made on the 5th day of December."

The defendant testified for himself as follows: "I reside in Henderson, Kentucky, and am acquainted with the Citizens' Bank of Dyersburg, Tenn.   The Henderson Hominy Mills is located at Henderson, and that bank is located in Dyersburg, Tenn.   My connection with the Henderson

Hominy Mills began on the 8th day of September, 1894, as
agent to buy corn on a salary.  I operated in the neighbor-
hood of Dyersburg, Newburn and Yates, and was buying in
all the different points along the road.  As such agent, I had
dealings with the plaintiff bank.  I do not remember exact-
ly when that dealing commenced, but it was after I
had made contracts for purchasing corn that the Hender-
son Hominy Mills through me made arrangements with the
bank to furnish the money to pay for the corn.  These con-
tracts were made with the parties who shelled the corn in the
shuck, and the Henderson Hominy Mills was to pay them
four cents per bushel for shelling the corn, and for every car
they loaded, I gave them a check on the Dyersburg Bank,
and when I made my rounds, I gave the bank a draft for the
whole amount on the Henderson Hominy Mills.  The per-
sons who did the shelling loaded the corn into the cars, and
I paid them by giving a check on the Dyersburg Bank signed
Henderson Hominy Mills, by J. B. Millet.  The bank had no
money on deposit to the credit of the Henderson Hominy
mills, with which to pay these checks, the checks were bal-
anced by a draft for the full amount of the checks up to its
date drawn by me on the Henderson Hominy Mills.  Wit-
ness produced the stubs of his check book, which were read to
the jury, showing the checks given on the Dyersburg Bank
for corn purchased for the Henderson Hominy Mills.  The
amounts $486.07, dated November 7, 1894; $530.72, dated No-
vember 9, 1894; $2,383.17, dated November 17, 1894;
$6,845.80, dated November 23, 1894; $2,743.87, dated No-
vember 30, 1894, and $2,469.36, dated December 1, 1894, are
amounts for which bills were drawn by me on the Henderson

Hominy Mills to take up the checks, which had been drawn on the bank, and paid by it, the last two being those for which the bills sued on were drawn. In the bill dated November 9, 1894, is included $2.50 exchange charged by the bank on the bill; in that of date November 17, 1894, is included $5.94 exchange. In that of date November 23, 1894, $17.11 exchange; in that dated November 30, 1894, $6.85 exchange, and in that dated December 1, 1894, $6.17 exchange. The bank knew that I was buying corn as agent for the Henderson Hominy Mills, and it was the understanding and agreement between the bank and myself that the amounts paid by the bank of the checks drawn by me were to be covered by drafts on the Henderson Hominy Mills. My salary was in no way dependent on the payment of these drafts."

W. W. Shelby was next introduced by defendant, who testified as follows: "I was one of the members of the firm of Henderson Hominy Mills. Am acquainted with the defendant, Millet. He was our agent for purchasing corn in Dyersburg. Millet was authorized to give drafts on us in payment for corn bought by him. He gave a number of drafts on us, several of which were paid. I had no communication with the plaintiff bank, except that I received a letter from them, the same which is here now shown me." The said letter was read in evidence to the jury, and is in words and figures as follows:

Dyersburg, Tenn., Nov. 16, 1894.

Henderson Hominy Mills, Henderson, Ky.:

Gentlemen: Your Mr. Millet is buying quite a lot of corn in this vicinity, and has made arrangements with us to handle his drafts on you. We have reason to believe that

he is your representative, but as the drafts are drawn without B. of L. attached, we prefer to have you authorize us to pay all his drafts.                    Yours truly,

A. R. WOOLLEN,

Asst. Cashier.

"In answer to that letter I wrote and placed in the mail the letter, a copy of which is here now shown me."

The defendant then offered to read to the jury the said copy to which plaintiff objected, but its objection was overruled, and plaintiff excepted, and the defendant then read the said copy in evidence to the jury, which is in words and figures as follows:

Henderson, Ky, 11, 17, 1894.

A. R. Woollen, Assistant Cashier, Dyersburg, Tenn.,

Mr. J. B. Millet is our duly authorized agent, and all his drafts will be promptly paid. He is a man in whom we have the greatest confidence, and will without doubt deal fairly with your people.          Yours truly,

Henderson Hominy Mills,

W. W. Shelby, Manager.

The appellee was recalled and testified as follows:     "I stated to the bank that I was the authorized agent of the Henderson Hominy Mills, and they gave me a blank book to give them checks, and when I came back I would give them a draft for the whole amount.    The bank knew that I was the authorized agent of the Henderson Hominy Mills, and furnished a book containing the blank checks, which I was to use in drawing on it for the money paid for the corn." Witness produced one of the checks taken from the said book filled out in pencil, which was read to the jury, and is as follows:

Dyersburg, Tenn., Dec. 4, 1894.

Citizens' Bank.                                    No. ———

Pay to the order of Hall & Co., $313.87.

Three hundred and thirteen 87-100 dollars.

Buying department Henderson Hominy Mills, for one car-load of corn.

Henderson Hominy Mills,

By J. B. Millet.

"That was the form of check which I drew on the bank in payment for corn bought by me."

Plaintiff then introduced A. R. Woollen, who testified as follows: "I was assistant cashier of the plaintiff Citizens' Bank at the time the bills in suit were drawn and had been since March 1, 1889. The bills in suit were made by Mr. Millet to take up checks on the bank given by him for corn bought for the Henderson Hominy Mills. Mr. Millet was introduced to us by Mr. Sugg, as representing the Henderson Hominy Mills. He had come over to buy corn for them, and he made with the bank an arrangement to have it pay the checks of the Henderson Hominy Mills drawn by him for the corn as he bought it, and at convenient periods he was to give the bank his draft on the Henderson Hominy Mills to take up the checks for the amount that had been paid by the bank at that time. The bank never requested him to draw any draft, but that was done at his own motion, and there was no understanding or agreement between him and the bank that they were not his individual drafts, or that he was not to be responsible on them. Nothing was said about that." On cross-examination, witness said the bank did not request Millet to draw these two drafts. They were drawn in

pursuance of the arrangement previously made and to cover the amounts that had been taken out for the Henderson Hominy Mills for the payment for corn.    Witness said he had written a letter to Shelby, which had been previously read.  Witness made no inquiries about Millet, except to find out whether he was the authorized representative of the hominy mills.  Made no inquiries as to his solvency.  He received the letter written by Mr. Shelby, a copy of which had been read to the jury.  On re-examination witness said, the arrangement before stated was made with Millet before the receipt of the letter from the Henderson Hominy Mills, and that the bills in suit were accepted as the bills of Millet.

The court then instructed the jury as follows:

1. The court instructs the jury to find for the plaintiff the two bills filed and read them with interest from the date at which they were presented to the hominy mills for payment.

2. But if the jury find from the evidence that Millet was the agent of the Henderson Hominy Mills, and the plaintiff knew that fact, and gave credit solely to said hominy mills, and these bills were drawn by Millet merely as evidence of the amount due said bank by said hominy mills not intending to bind himself and the plaintiff knew such to have been his purpose, or intention when they accepted said bills, they will find for the defendant.

To the giving of which instructions appellant objected and excepted.  The plaintiff offered instructions A., B. and C., which were refused by the court with exceptions.  The instructions are as follows:

A. If the jury believe from the evidence that the bills

of exchange in the petition mentioned were drawn by the defendant, J. B. Millet, in pursuance of an agreement by him with the plaintiff that his drafts on the Henderson Hominy Mills were to be given for the money, plaintiff might advance on their checks made by said Millet, then they will find for the plaintiff.

B. If the bills sued on were made by Millet in payment of moneys advanced by plaintiff on the checks of the Henderson Hominy Mills made by him, and signed them in his own name without notification to plaintiff that they were not to be binding on him, then they must find for plaintiff as to said bills.

C. If the jury believe from the evidence that the defendant, Millet, made an arrangement with the plaintiff by which they were to handle his drafts on the Henderson Hominy Mills for money that he might need in buying corn for said mills, and the bills sued on were drawn in pursuance of such arrangement, then Millet is bound by said bills, and the jury will find for plaintiff thereon.

Appellee asked instructions X and Y, which were refused by the court with exceptions. Said instructions are as follows:

X. On motion of defendant, Millet, the court instructs the jury that upon the pleadings the defendant is entitled to a verdict, and they are directed to find for the defendant.

Y. If the jury believe from the evidence that Millet, as the agent of the Henderson Hominy Mills, engaged in the purchase of corn for said mills, made an arrangement with the plaintiff bank to pay for the corn purchased by drawing the checks of said hominy mills on said bank, and at intervals to draw bills upon the mills in favor of the bank for the

amount of said checks, and the bills in suit were so drawn and accepted by the bank, with the knowledge that the defendant, Millet, was drawing said bills simply to settle the amount advanced by the bank on the purchase of corn, they will find for the defendant, Millet.

The first contention of appellee is that the petition is insufficient for the reason it does not aver protest of the bills, or that protest was waived, and therefore the judgment should be affirmed without regard to any other question involved. But it will be seen that each bill has endorsed on the face thereof "no protest," which being a part of the bill in suit, the petition and bill together shows a right to recover, and it was not necessary to specifically aver a waiver of protest. If there had been any interlineation or change in the bill after it was signed, the defendant should have taken advantage of that by answer. We think the evidence establishes due presentation of the bills for payment; hence the only questions for decision are whether the bills were executed without any consideration, and whether the appellee was entitled to plead and prove that the agreement between him and appellant was in substance that he was not to be bound upon the bills, but that they were accepted and treated alone as the obligation of the hominy mills. So far as the plea of no consideration is involved it is sufficient to say that the existence of the debt against the hominy mills was a sufficient consideration to bind the appellee and render him liable for the debt, if he in fact agreed to pay the same or to be bound therefor. The bills in suit clearly import an obligation upon the part of the appellee to pay the same,

[2]

and unless he escape liability on account of some arrangement between him and appellant, judgment should have been rendered against him for the amount of the bills.

It is insisted for appellee that he was entitled to allege and prove the alleged agreement between him and appellant to the effect that he was not to be bound upon the bills; while it is earnestly contended for appellant that appellee could not be heard to plead and prove any such agreement, the same being in contradiction of the written agreement and contrary to the law in such cases. We deem it unnecessary to discuss or review all the authorities cited by counsel; but will first notice some of those relied on by appellee. The appellee cites Story on Bills, section 187, which seems only to go to the extent of holding that the plea of no consideration is good as between the drawer and the payee. Appellee also cites 1 Daniel on Negotiable Instruments, 3d edition, section 311. We quote as follows:

"It will be seen from preceding sections that if an agent should in his own name draw a bill of exchange on his principal for a debt of the latter, he will be personally responsible to the drawer in the case of the default of the principal; although upon its face the bill was drawn on account of his principal. And it is stated in the American Leading Cases to be the general rule that whenever an agent puts his name to a negotiable instrument, as a party to it, he is legally liable to the promisees and to endorsees upon it."

Section 311 says: "The English cases clearly bear out these views, but the weight of authority in the United States is otherwise, though the cases are not uniform. If a drawer signs himself A. B., agent, and the payee takes the bill so

drawn on his principal debtor to whom he has given credit, and to whom he looks for payment, it has been said that there is really no valuable consideration for his liability. But the debt of another is a valuable consideration, and if the agent intended to be bound upon the draft no other consideration will be necessary. Bills are constantly drawn for accommodation, and the transaction might be construed as intended to be of this character. We think, however, that a bill drawn by A. B., agent, might well be distinguished from a note so signed for the language is not inconsistent with the idea that the drawer signs as agent of the drawee whose name is disclosed upon the face of the instrument, while in a note none but the maker's name is disclosed. Therefore, parol evidence might well be admitted to show the real circumstances of the case from which might be inferred the understanding of the parties. When there is no intimation of agency accompanying the drawer's name, the case presented is more difficult. This view, however, may be presented when the buyer has parted with his goods upon the faith of the principal's credit. But dealing with his agent, he then has funds in the principal's hands, and it is his draft that the principal would honor, provided he knew the fact that he was indebted to the drawer."

Without quoting the entire section it is sufficient to say that the doctrine contended for by appellee is not well sustained by the authorities, *supra*. It will also be seen that the draft in question was simply signed J. B. Millet with direction to charge to his account.

In vol. 3, Kent's Commentaries, 4th edition, pages 80 and 81, it is said: That as between the original parties to negotiable paper the consideration may be inquired into.

In Parson on Notes and Bills, 2d edition, page 93, cited by appellee, it is said, commencing on page 92: "If an agent signs a note with his own name alone, and there is nothing on the face of the note to show that he was acting as agent, he will be personally liable on the note, and the principal will not be liable. And although it can be proven that the agency was disclosed to the payee, when the note was made and it was the understanding of all parties that the principal and not the agent should be held liable, this will not generally be sufficient to authorize the discharge of the agent, or to render the principal liable on the note. But the principal will be liable under such circumstances on the original consideration for which the note was given. And there may be cases in which the agent would not be personally liable on the bill or note, though there should be nothing on the face of the instrument to indicate the agency. Thus if an agent in the execution of his agency incurs a debt on behalf of his principal, and draws on his principal a bill for the amount thereof in favor of the creditor, it has been held that the agent will not be held liable on the bill, if it was the understanding of the parties that he acted as agent merely, and did not intend to make the debt his own. The principal object in drawing the bill in such cases is to certify to the principal the amount due to the creditor, and the agent may it seems defend on the ground of want of consideration. Of course this will not apply to a subsequent *bona fide* holder without notice. And if an agent draws a bill on a third person in his own name, but there is sufficient evidence on the face of the instrument to inform the drawee that he is to pay the amount on account of the principal and

not on account of the drawer, the drawee having paid the bill, will not be entitled to maintain an action for money paid against the agent. Thus where an agent of the owners of a steamboat drew a bill in his real name and directed the drawee to charge the amount to account of Steamer Walter Scott, it was held that the agency of the drawer was apparent on the face of the bill in consequence of this direction which negatived the idea that he was to be personally bound."

The most that can be sustained from the foregoing, is that in some instances the agent has been allowed to escape liability by proving a parol agreement between him and the payee that the agent was not to be personally liable on the bill.

We will now proceed to notice some of the authorities relied on by appellant. In Story on Agency, 9th edition, section 155, it is said: "If from the nature and terms of the instrument it clearly appears not only that the party is an agent, but that he means to bind his principal and to act for him, and not to draw, accept or endorse the bill on his own account that construction will be adopted however inartificial may be the language in furtherance of the actual intention of the instrument. But if the terms of the instrument are not thus explicit, although it may appear that the party is an agent, he will be deemed to have contracted in his personal capacity, and there is no defense on this point whether the instrument be a deed or an unsealed contract. Thus if an agent should execute a deed in his own name and should thereby, having acted on behalf of his principal, covenant, etc., he would be personally bound thereby and not

his principal. So if an unsealed instrument should purport to be a memorandum of an agreement between A. B. on behalf of C. D. of the one part, and E. F. of the other part to execute a lease of certain premises of the principal, it would be held to be the contract of the agent and binding on him personally. *A fortiori*, an agent will be held to be personally bound if the name or character of the principal should not appear on the instrument, or if it should appear that no other person than himself could be legally bound by it, although he should sign his name thereto as agent, or as acting in an official capacity."

In section 156 after some preliminary remarks the author gives the further illustration: "Thus if a broker should sell goods and draw upon the buyer for the amount in his own name in favor of his principal, if the bill should be dishonored he would be personally liable, unless some special words were used in the bill to prevent it. And this liability would not only extend to third persons, but even to his principal, although he was known to be a mere agent. For in such case the bill imports upon its face a personal liability as drawer in favor of all persons who are or become parties to the bill, and there is nothing in the character of the agency which excludes such personal liability, if he chooses voluntarily to incur it in favor of his principal, as well as in favor of third persons. So if a known agent should draw a bill on a third person in favor of the payee, and direct the drawee to place the amount to the debit of his principal he would be personally liable on the bill to the payee, unless he use other words to exclude it."

It is said in section 157: "Precisely the same personal

liability will attach to an agent, who in his own name signs a note as maker or a bill as drawer or accepts a bill or endorses a bill or note generally, for in such a case, although he is a known agent, the making or accepting or endorsing of the instrument is treated as an admission that it is his personal act, not only in respect to third persons, but also in respect to his principal."

In Pence v. Stanton, 10 Wend., 275, the court in discussing the liabilities of parties to bills, and testimony admissible to show the real contract quotes with approval from other decisions cited. "The parol testimony explaining and showing the real nature of the transaction was decided to be inadmissible on the ground it contradicted or varied the written contract."

Judge Parker in delivering the opinion of the court says: That no person in making a contract is construed to be an agent of another, unless he stipulates for his principal by name, stating his agency in the instrument, which he signs. This principle has been long settled and has been frequently recognized. Nor do I know, he continues, an instance in the books of an attempt to charge a person as the maker of a written contract appearing to be signed by another, unless the signer professes to act as by procuration or authority, and state the name of the principal on whose behalf he gave his signature. He also discusses at length the admissibility of parol evidence in such cases to show the real character of the transaction, and holds it to be utterly incompetent on the ground which has already been stated." Quoting Mayhew v. Prince, 16 Mass., 54; Neyer v. Baker, 6 B. I. N., 228.

"It is well settled that if a private agent draw a bill or

enter into any other contract in his own name, without stating that he acts as agent so as to bind his principal, he will be personally liable." Quoting Chitty on Bills, 36, and cases cited; 5 Gaunt., 749; 2 Marsh, 454; 5 East., 148; 1 B. O. S. & P. V. L., 368; 1 T. R., 181.

·It is not sufficient to charge the principal, or discharge the principal from personal responsibility merely to subscribe himself as agent, if the language of the instrument imports a personal contract on his part. Quoting 5 Mass., 299; 6 Mass., 58; 8 Mass., 103; 1 Gall., 630; Chitty, 52; 9th Cranch, 155. But where the name of the principal appears on the face of the instrument or contract, and it is evident that the agent did not intend to bind himself personally, but acted merely on behalf of the principal, if he acted by competent authority, the principal and not the agent will be bound."

In 2 Stranger, page 955, it is said: "A bill of exchange is a contract by the custom of merchants, and the whole of that contract must appear in writing."

In Smith's Leading Cases, vol. 2, Hare & Wallace's Notes, page 421, it is said: "It has been said that if A contract in writing without naming his principal so that he appears upon the writing to be himself the principal, does not the creditor who seeks to show that while thus professedly contracting for himself he really contracted for the principal, endeavor to infringe this rule of evidence by adding to the written contract a new term at variance with the written contract. This question, however, it is apprehended, must receive different answers upon different occasions. Answers varying according to the object with which it is sought to introduce the parol testimony which thus submitted never

can be heard for the purpose of discharging the agent, but may always be so for that of charging the principal. That parol evidence can never be admitted for the purpose of exonerating an agent, who has entered into a written contract in which he appears as principal, even though he should propose to show if allowed, that he mentioned his principal at the time of entering into it, seems to be now well established."

Numerous decisions are quoted by the author. It is further said in Leadbitter v. Farror by Lord Ellenborough: "It is a universal rule that the man who puts his name to a bill of exchange makes himself personally liable, unless he states on the face of the bill that he subscribes it for another, or by procuration of another? Unless he says plainly, 'I am the scribe,' he becomes liable."

In the case of Nash v. Towne, 5 Wallace, 703, which was an action upon a bill of exchange, the court said: "Parol evidence can never be admitted for the purpose of exonerating an agent who has entered into a written contract in which he appears as principal, even though he should propose to show, if allowed, that he disclosed his agency and mentioned the name of his principal at the time the contract was executed. Where a simple contract other than a bill or note is made by the agent, the principal whom he represents may in general maintain an action upon it in his own name, and parol evidence is admissible, although the contract is in writing, to show that the person named in the contract was the agent, and that he was acting for his principal. Such evidence, says Baron Park, does not deny that the contract binds those who on its face it purports to bind, but shows

that it also binds another, and that principle has been often
adopted by this court. Cases may be found also where it
is held that the plaintiff might prove by parol that the other
contracting party named in the contract was but an agent of
an undisclosed principal, and in that state of a case he might
have his remedy against either at his election. Evidence to
that effect will be admitted to charge the principal or to
enable him to sue in his own name, but the agent who binds
himself is never allowed to contradict the writing by proving
that he contracted only as agent, and not as principal.

In Randolph on Commercial Paper, vol. 1, section 382, it
is said: "The liability of the agent to the principal is next
to be considered. Where the agent draws a bill of exchange
on his principal by his authority the principal is not in gen-
eral liable as drawer. Nor is it necessary in such cases that
the agency of the drawer should be expressed on the face of
the bill, if it is drawn in fact for a debt of the principal.
Where the drawer of a bill is an agent of the drawee, it is
held in England that he is liable both to the payee and to
subsequent parties, although known by them to be acting
as agent merely. In the United States a different rule
seems to have been laid down, and it has been held that the
agent who draws a bill on his principal for goods sold him,
disclosing the principal, is not so liable to a payee who has
knowledge of the agency. But if the agent draws the bill
on his principal in his individual name he will be liable as
drawer to the payee and subsequent parties, even though the
bill is drawn expressly chargeable to the principal's account,
and though the payee knows of the agency."

In Parsons on Notes and Bills, vol. 1, page 102, it is said:

"It is the general rule in regard to simple contracts that parol evidence may be received to make an unnamed principal liable, or to give them the benefit of the contract for this leaves the actual party liable as before, and, therefore, can not be considered as varying the contract. But such evidence can not be received to discharge the actual signer on the ground of his agency for this would be to vary the contract. In reference to a negotiable paper, however, the rule, as we have seen, is more strict. For parol evidence is not admissible either to discharge the actual signer or to charge one whose name does not appear on the instrument. The reason for this is that from the nature and purposes of negotiable paper no person should be held as a party to it whose name is not written upon it, as such paper ought to contain in itself its own evidence, and thus be independent of extrinsic proof. One who puts his name on negotiable paper will be liable personally, as we have seen, although he acts as agent, unless he says so and says also who his principal is, that is unless he uses some expression equivalent to Lord Ellenborough's language, 'that I am the mere scribe.' For if the construction may fairly be that while he acts officially, or at the request of others or for the benefit of others, yet if what he does is still his own act, it will be so interpreted."

In Daniel on Negotiable Instruments, vol. 1, section 305, it is said: "The party so signing must have intended to bind somebody upon the instrument, and no promissor but himself thereon appearing, it must be construed as his note or as a nullity. And though he term himself agent, such suffix to his name will be regarded as a mere *descriptio per-*

Citizens' Bank of Dyersburg, Tenn., v. Millet.

*sonae* or as an ear mark of the transaction, and may be rejected as surplusage. And this principle applies, although it can be proven that the payee knew of the agency when the note was made, and it was understood that the principal and not the agent should be bound, for such evidence would vary the terms of the written note. But under such circumstances if the note were not paid the principal might be sued upon the original consideration. However if the payee with full knowledge of the agency and of the principal's liability and relying solely on the agent's credit took his individual note, the principal can not be resorted to at all. In a late case in New York, the note was signed simply J. S. M., agent. It was alleged to have been given for goods sold by the defendant, a lady, probably the agent's wife, and recovery against the alleged principal was sustained. This decision is in conflict with the general current of authority. The true principle has been thus stated by the United States Supreme Court. Parol evidence can never be admitted to exonerate an agent who has entered into a written contract in which he appears as principal, even though he should propose to show, if allowed, that he disclosed his agency, and mentioned the name of his principal at the time the contract was executed."

We have been referred to no decisions of this court applicable to the case at bar. It seems manifest that the decided weight of authority, if indeed there be any authority to the contrary, is that the first paragraph of the answer constituted no defense, except so far as the plea of no consideration was relied on; and that being true the testimony as to the agreement or understanding between appellant and appellee that

appellee should not be bound on the bills was incompetent and could not authorize a verdict in defendant's favor. We have already seen that there was no proof to sustain the plea of no consideration. It further appears in this case that the appellant lived in the State of Tennessee distant from the home of the hominy mills, as well as from appellee's residence, and it seems clear that the agreement at the commencement of the business transaction was that appellee should give the checks of the hominy mills on appellant to the persons from whom he purchased corn, and that from time to time he would give his draft to appellant upon the hominy mills for the sums so paid out by the bank on the checks as aforesaid, and it seems certain that appellant for some time relied entirely upon that agreement or contract, and cashed the checks of the hominy mill signed by appellee as agent, without knowing in fact, except from appellee that he was the authorized agent of the hominy mills. It may seem hard for appellee to pay the debts sued for, but would it not be still harder upon appellant to lose the money which it had advanced relying upon the promise of appellee to do that which in fact he did do, that is give his own bill in consideration of the money furnished by the bank at his instance and request, although he was merely the agent of the hominy mills.

From the foregoing, it will be seen that the court erred in giving the second instruction complained of. Instruction A asked for by plaintiff should have been given. Instruction B was more favorable to appellee than he was entitled to. Instruction C should have been given. Instructions X and Y asked for by appellee were properly refused.

For the reasons indicated the judgment of the court below is reversed, and the cause remanded with directions to award appellant a new trial, and for proceedings consistent with this opinion.